[Civ. No. 35274. Second Dist., Div. Three. Dec. 16, 1969.]

PETER J. PITCHESS, as Sheriff, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
JAMES DOZAL et al., Real Parties in Interest.

**COUNSEL**

Thomas C. Lynch, Attorney General, Megan A. Wagner, Deputy Attorney General, John D. Maharg, County Counsel, and Michael H. Dougherty, Deputy County Counsel, for Petitioners.

No appearance for Respondent.

Marks, Sherman & London, Robert H. London, Burton Marks, Moore & Steelman and Berrien E. Moore for Real Parties in Interest.

**OPINION**

**FEINERMAN, J. pro tem.**\*—The real parties in interest in this matter are divided into two groups. The first group, consisting of five plaintiffs (James Dozal, Robert La Rue, Tommie Robbins, Ralph Holiday, and Ron Walton), filed a joint complaint for declaratory and injunctive relief in the Superior Court of Los Angeles County on July 24, 1969. On the same date on which the complaint was filed, the court issued an ex parte temporary restraining order restraining the Sheriff of Los Angeles County and the state from making any physical arrests of the plaintiffs or their employees for any alleged violations of law arising out of the presentation of "nude entertainment" except upon the following conditions: (1) that a valid warrant of arrest be obtained from a magistrate authorized to issue such warrants upon the issuance of a criminal complaint; and that the issuance

---

\*Assigned by the Chairman of the Judicial Council.

of the criminal complaint be based upon probable cause; (2) that the magistrate be informed of the respondent court's restraining order, and be provided with a copy of the complaint, the restraining order, and the points and authorities of plaintiffs. The restraining order further provided that the sheriff and the state were not prevented by the order from issuing citations for violations of law provided the citations were not "accompanied by a physical detention or restraint."

On August 4, 1969, the trial court held an evidentiary hearing on the motion for issuance of a preliminary injunction and received a stipulation from all parties that the court might view a performance of a nude female dancer in one of the plaintiffs' places of business before ruling on the matter. On August 19, 1969, the court signed a preliminary injunction restraining the sheriff and the state from making any physical arrests of the plaintiffs or their employees at their places of business "where the basis for said physical arrests is that there is a purported violation of local or state law in that nude entertainment is featured" except upon the condition that a valid warrant of arrest be obtained from a magistrate and that the issuance of the criminal complaint be based on probable cause. The preliminary injunction also required that the magistrate be informed of the preliminary injunction and be given a copy of the preliminary injunction and the memorandum opinion of the court. The preliminary injunction further provided that ". . . Defendants be and hereby are similarly enjoined from issuing citations under Penal Code § 853, [sic § 853.6] for alleged violations of Penal Code §§ 314.1, 314.2, 647a., or 311.2, or similar sections (or for alleged violations of any other State or local ordinance, the gravamen of the offense being the presentation of nude entertainment) unless the citing officer is able to certify under penalty of perjury that he is familiar with the act presented by Brenda Joyce Caddell on March 14, 1969, as more fully described in Los Angeles Sheriff's Department Complaint Report file number 469-04750-0377-133, and that the nude act for which he is issuing a citation is substantially different in form and content from the 'Caddell' act so that in the opinion of the citing officer there is probable cause to believe that a lewd or obscene show is being presented in violation of the above-named Penal Code sections (or similar type statutes or ordinances); and said officer shall state with particularity the substantial differences which lead the officer to the conclusion that such citation under Penal Code § 853 [sic § 853.6] should issue."[1]

The second group of real parties in interest (Robert E. Poff, 13801

---

[1]Brenda Joyce Caddell was an employee of real party in interest James Dozal. She was acquitted on June 13, 1969, in the Inglewood Municipal Court of a charge of indecent exposure (Pen. Code § 314.1) arising out of a nude dance performance held on March 14, 1969.

Inglewood Corporation, Arnold P. Darin, and Edward Grimes) filed separate complaints for declaratory and injunctive relief in respondent court. The allegations in each of these complaints were substantially the same. A temporary restraining order was issued in each case, similar in form to the restraining order issued in the Dozal matter, restraining the sheriff and the state from arresting the plaintiffs or their employees for any purported violations of the law arising from the presentation of "nude entertainment" except upon the conditions set forth therein.

The petitioners filed demurrers to each of the four complaints. When the motions for preliminary injunctions came on for hearing, they were continued to October 9, 1969, to allow the petitioners time to seek appropriate relief before this court. All parties stipulated in the trial court that the temporary restraining orders previously issued might stay in full force and effect until the hearings on the motions for preliminary injunctions.

Although the granting of a preliminary injunction is an appealable order, this remedy is inadequate where, pending an appeal, the People are restrained from enforcing a statute the validity of which is not challenged. Under such circumstances, the public interest requires a prompt determination of the issue whether or not the trial court's action is in excess of its authority. (*City of Santa Monica* v. *Superior Court,* 231 Cal.App.2d 223, 225 [41 Cal.Rptr. 824]; *Crittenden* v. *Superior Court,* 61 Cal.2d 565, 568 [39 Cal.Rptr. 380, 393 P.2d 697].)

As a general rule an injunction will not be granted to protect a person from prosecution for the alleged commission of a criminal offense on a showing that he is not guilty of such offense or that the law does not apply to him. The court having jurisdiction over criminal offenses is the forum in which such questions of fact must be determined. (*Fairchild* v. *Brock,* 88 Cal.App.2d 425 [199 P.2d 9]; *Manchel* v. *County of Los Angeles,* 245 Cal.App.2d 501 [54 Cal.Rptr. 53].)

An exception has been made to this general rule in both federal and state courts where constitutional statutes are being unconstitutionally applied to suppress constitutional rights guaranteed to all citizens by either the federal or state Constitutions (*Brock* v. *Superior Court,* 12 Cal.2d 605 [86 P.2d 805]; *Bueneman* v. *City of Santa Barbara,* 8 Cal.2d 405 [65 P.2d 884, 109 A.L.R. 895]; *Cox* v. *Louisiana,* 379 U.S. 559 [13 L.Ed.2d 487, 85 S.Ct. 476]; *Wright* v. *Georgia,* 373 U.S. 284 [10 L.Ed.2d 349, 83 S.Ct. 1240]; *Edwards* v. *South Carolina,* 372 U.S. 229 [9 L.Ed.2d 697, 83 S.Ct. 680]).

In determining whether these exceptional circumstances exist, a trial

court must proceed with great caution. In *City of Santa Monica* v. *Superior Court, supra,* 231 Cal.App.2d 223, 226 [41 Cal.Rptr. 824], this standard of care is set forth as follows: "[W]e regard it as beyond question that trial courts should be extremely cautious, and even hesitant and reluctant, when asked to enjoin law enforcement officials from enforcing an ordinance obviously approved and adopted by duly elected representatives of the people for the purposes of promoting and protecting public morality *prior to a trial on the merits.*"

When we are concerned with First Amendment rights of a citizen, however, more protective procedural standards are compelled. Thus, in *Flack* v. *Municipal Court,* 66 Cal.2d 981 [59 Cal.Rptr. 872, 429 P.2d 192], it was held that with the exception of a situation involving a legitimate emergency, even if a search is contemporaneous with an arrest, a search warrant must be secured prior to any search for or seizure of materials alleged to be obscene.[2]

Inasmuch as the performance of a dance for an audience constitutes a method of expression that, in the absence of proof of obscenity, warrants the protection of the First Amendment (*In re Giannini,* 69 Cal.2d 563, 567 [72 Cal.Rptr. 655, 446 P.2d 535]), we must determine in this case what the proper procedures to be followed by a trial judge are when a party seeking an injunction claims that a valid statute is being unconstitutionally applied to suppress the alleged exercise of First Amendment rights.

In *Dombrowski* v. *Pfister,* 380 U.S. 479 [14 L.Ed.2d 22, 85 S.Ct. 1116], the United States Supreme Court held that federal courts should abstain from enjoining state court criminal proceedings unless the defense of the state's criminal prosecution will not assure adequate vindication of First Amendment rights. According to *Dombrowski,* this condition exists when the state has invoked the criminal law in bad faith and for the purpose of harassing and disrupting the exercise of First Amendment rights. Federal courts are available to enjoin the invocation of state criminal process when that process is abusively invoked without any hope of ultimate success, but only to discourage the assertion of constitutionally protected rights.

*Dombrowski* was construed by the United States Supreme Court in *Cameron* v. *Johnson,* 390 U.S. 611 [20 L.Ed.2d 182, 88 S.Ct. 1335] (in which the court held the doctrine of abstention applicable). In *Cameron*

---

[2]In *Flack* v. *Municipal Court, supra,* the court was dealing with a film that had been showing at a public theatre for two weeks. In footnote 10 of the *Flack* opinion, the court noted that "the one-night surreptitious screening of a film at a locked-door 'stag' party may under appropriate circumstances justify a seizure without a warrant."

the court concluded that the "special circumstances" establishing irreparable injury sufficient to justify federal intervention comes down to the proposition that state officials invoke a statute in bad faith to impose continuing harassment in order to discourage the exercise of protected First Amendment expression "with no intention of pressing the charges or with no expectation of obtaining convictions."

The court, in *Cameron v. Johnson, supra,* approved the procedures followed by the federal district court in holding an evidentiary hearing to determine the motive of state officials. The court also accepted the district court's finding "that there was no harassment, intimidation or oppression of . . . complainants in their efforts to exercise their constitutional rights, but they were arrested and they are being prosecuted in good faith . . ."

We believe that the basic guidelines mandated for federal courts of equity in *Dombrowski* and *Cameron* are also an appropriate model for state courts when First Amendment rights are involved. In applying these rules a trial court should realize that even the dissenting justices in *Cameron* recognized the fact that *Dombrowski* must be cautiously applied when they stated in their dissent: *"Dombrowski* is strong medicine. It involves interposition of federal power at the threshold stage of the administration of state criminal laws. *Dombrowski's* remedy is justified only when First Amendment rights, which are basic to our freedom, are imperiled by calculated, deliberate state assault. And those who seek federal intervention bear a heavy burden to show that the State, in prosecuting them, is not engaged in use of its police power for legitimate ends, but is deliberately invoking it to harass or suppress First Amendment rights. *Dombrowski* should never be invoked when the State is, in substance and truth, engaged in the enforcement of valid criminal laws. Ordinarily, the presumption that the State's motive was law enforcement and not interference with speech or assembly will carry the day." (*Cameron v. Johnson,* 390 U.S. 611, 624 [20 L.Ed.2d 182, 192, 88 S.Ct. 1335].)

In dealing with First Amendment expression, a distinction must also be made between books and films, where the subject matter is permanent and does not change, and a dance, where the character of the dance can change from day to day (and sometimes from moment to moment). A much stronger showing would have to be made by a party seeking judicial protection against arrest for nude dancing than by a book seller or a film exhibitor seeking similar relief. We cannot ignore the fact that when the form of expression can be instantly changed, as in a dance, there exists the possibility that the injunctive process can be utilized as a shield to avoid arrest for deliberate violations of valid penal statutes regulating moral conduct.

In reviewing the preliminary injunctions and restraining orders in the case at bench, we are confronted at the outset by orders that are patently ambiguous and ill-defined.  ■  An injunction must be definite enough to provide a standard of conduct for those whose activities are proscribed, as well as a standard for the ascertainment of violations of the injunctive order by the courts called upon to apply it.  ■  An injunction which forbids an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application exceeds the power of the court. (*City of Vernon* v. *Superior Court*, 38 Cal.2d 509, 513 [241 P.2d 243]; *Weber* v. *Superior Court*, 26 Cal.2d 144, 148 [156 P.2d 923]; *Brunton* v. *Superior Court*, 20 Cal.2d 202, 205 [124 P.2d 831]; *Gottlieb* v. *Superior Court*, 168 Cal.App.2d 312 [335 P.2d 714].)

■  The preliminary injunction issued in Dozal v. Pitchess forbids the petitioners from enforcing any laws with regard to "nude entertainment." What do these terms mean? Nowhere in the order are these terms defined. Petitioners suggest that the order is broad enough to "cover a public orgy held in the plaintiffs' places of business as long as the participants were nude, and the orgy was presented for purposes of entertainment." The order in Dozal also requires that a police officer who wishes to issue a citation for alleged violations of the Penal Code be "familiar" with the act performed by Brenda Joyce Caddell on March 14, 1969. The order is silent as to how the officers are to become "familiar" with this performance. Must they have seen the performance in question? Is a reading of the sheriff's complaint report that resulted in the Caddell arrest sufficient? Must the officer preparing to make a new arrest talk with the officer that actually saw the Caddell performance and have it described to him? None of these questions can be answered by a reading of the court's order so that those who are subject to the order can understand and clearly apply it.

The restraining orders issued in the other actions (Robert E. Poff, 13801 Inglewood Corporation, Arnold P. Darin, and Edward Grimes), are subject to the same objections of vagueness and ambiguity in their reference to "nude entertainment."

■  If we go beyond the defects in the orders and look at the substance of the proceedings in these cases, it is our considered judgment that the real parties in interest have failed to show such irreparable injury as will entitle them to injunctions enjoining criminal prosecutions where the constitutional validity of the statutes involved is unchallenged. Real parties in interest bear the heavy burden of showing that the People ·are not prosecuting them in good faith and are not using their police power for legitimate ends, but are deliberately invoking it to harass, intimidate, or oppress them in the exercise of their First Amendment rights.

On the record before us, the evidence was not sufficient for the trial court to infer that the motive of the People was interference with freedom of expression and not law enforcement. The acquittal of one dancer based on one performance at one place of business and the trial judge's personal view of the entertainment presented at one place of business is not sufficient evidence to establish a pattern of harassment or suppression. We are cognizant that the trial judge, in his memorandum opinion of August 19, 1969, took judicial notice that as of August 14, 1969, over 100 misdemeanor complaints had been filed in the Inglewood Municipal Court as a result of citations issued for alleged violations of Penal Code sections 314.1, 314.2 and 647a. However, absent a showing of the total scope of the conduct in question in the jurisdiction[3] and the specific nature of the conduct for which each of these 100 arrests was made, the reference to the number of citations for alleged violations of the Penal Code has little meaning.

The petition for peremptory writ of prohibition is granted requiring the respondent court to annul and vacate the orders heretofore made in each of the cases and to make a new and different order in each of said cases denying the motions for preliminary injunctions.

Ford, P. J., and Schweitzer, J., concurred.

The petitions of the real parties in interest for a hearing by the Supreme Court was denied February 11, 1970.

---

[3]Data relevant to this inquiry would include information such as the number of businesses in the jurisdiction presenting "bottomless dancers"; the number of dancers performing in the various places of business in the jurisdiction; and the number of performances that took place during the period of time in question. One hundred arrests out of 100,000 dance performances would not be very significant, but 100 arrests out of 200 dance performances would be very significant.