[No. A077630. First Dist., Div. Five. Dec. 12, 1997.]

THE PEOPLE ex rel. DANIEL E. LUNGREN, as Attorney General, etc.,
Plaintiff and Appellant, v.
DENNIS PERON et al., Defendants and Respondents.

1384

COUNSEL

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Robert L. Anderson, Assistant Attorney General, John A. Gordnier, Assistant Attorney General, Jane Zack Simon and Larry Mercer, Deputy Attorneys General, for Plaintiff and Appellant.

J. David Nick and Michael K. Tcheng for Defendants and Respondents.

OPINION

PETERSON, P. J.—The People ex rel. Daniel E. Lungren, as Attorney General of the State of California, (the People) appeal from a trial court order which followed the enactment by initiative of Health and Safety Code

section 11362.5,[1] and modified a preliminary injunction the trial court had granted prior to passage of that initiative.

We hold the modifying order is legally defective. It wrongly allows respondents Dennis Peron and Beth Moore to resume and continue conduct that was properly enjoined by the preliminary injunction and remains criminally proscribed by section 11360 after the enactment of section 11362.5. The trial court's error was further compounded by the failure of its order to properly and legally define the conduct to be enjoined.

We, therefore, will order vacation of the order of modification and reinstatement of the preliminary injunction in effect prior to the modification.

I. FACTS AND PROCEDURAL HISTORY

Section 11360(a) provides that every person who "transports, imports into this state, sells, furnishes, administers, or gives away" any marijuana is guilty of a felony. Sections 11357 and 11358, respectively, prohibit the possession and the cultivation of marijuana; section 11359 prohibits the possession for sale of marijuana; section 11361 prohibits the involvement of minors in the sale or use of marijuana; and section 11366 makes it a crime to maintain "any place for the purpose of unlawfully selling, giving away, or using [marijuana]."

Section 11570 states: "Every building or place used for the purpose of unlawfully selling, serving, storing, keeping, manufacturing, or giving away any [marijuana], and every building or place wherein or upon which those acts take place, is a nuisance which shall be enjoined, abated, and prevented, and for which damages may be recovered, whether it is a public or private nuisance."

Invoking section 11570, the People filed a complaint to enjoin respondents from selling or furnishing marijuana at a premises in San Francisco known as the Cannabis Buyers' Club. Supporting the complaint are declarations from San Francisco police officers, agents of the California Bureau of Narcotics Enforcement, and agents of the Federal Drug Enforcement Administration. These declarations, which were not disputed by other evidence, generally demonstrate an indiscriminate and uncontrolled pattern of sale to

[1]Proposition 215, effective November 6, 1996. (Cal. Const., art. II, § 10, subd. (a).)

Unless otherwise indicated, all subsequent statutory references are to the Health and Safety Code. Statutory subdivisions for sections 11360 and 11362.5 will be referred to without the "subdivision" or "subd." designation, e.g., section 11362.5, subdivision (e) will be designated simply as section 11362.5(e).

thousands of persons among the general public, including persons who had not demonstrated any recommendation or approval of a physician and, in fact, some of whom were not under the care of a physician, such as undercover officers. Young children were seen wandering in and out of the premises, and some persons who had purchased marijuana on respondents' premises were reselling it unlawfully on the street. The declarations also reveal that respondents were importing marijuana, in violation of section 11360(a).

The trial court initially granted a temporary restraining order; and on November 4, 1996, it issued a preliminary injunction enjoining respondents from using the premises "for the purpose of selling, storing, keeping or giving away [marijuana]."

Following the issuance of the preliminary injunction, the voters passed Proposition 215, the "Medical Use of Marijuana" initiative, which added section 11362.5. Section 11362.5 provides, in relevant part: "(d) Section 11357, relating to the *possession* of marijuana, and Section 11358, relating to the *cultivation* of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician. [¶] (e) For the purposes of this section, 'primary caregiver' means the individual designated by the person exempted under this section who has *consistently* assumed responsibility for the housing, health, or safety of that person." (Italics added.)

Shortly after the passage of section 11362.5, respondents moved to modify the preliminary injunction. Their principal ground for modification was their assertion that they were " 'primary caregiver[s]' " as defined by newly enacted section 11362.5(e) of the thousands of persons to whom they sold or furnished marijuana, and as such were authorized under state law to continue to distribute marijuana to those persons for whom the medical use of marijuana is permitted by section 11362.5.[2]

The trial court then issued an "Order Modifying Preliminary Injunction" which states: "[Respondents] shall not be in violation of the injunction issued by this Court if their conduct is in compliance with the requirements of [section] 11362.5. [Respondents] may possess and cultivate medicinal marijuana for their personal medicinal use on the recommendation of a

---

[2]Although the possession and distribution of marijuana is a federal crime (see, e.g., 21 U.S.C. §§ 841, 844, & 844a), the Attorney General does not explicitly rely here upon any provision of federal law. We, therefore, leave to another day the questions of federal law compliance and federal preemption which are implicit in the facts of this case.

physician or for the personal medicinal use of persons who have designated the [respondents] as their primary caregiver pursuant to [section] 11362.5(e), whose physician has recommended or approved the use of medicinal marijuana either orally or in writing to the [respondents]. [¶] [Respondents] shall maintain records showing the primary caregiver designation for persons who have so designated the [respondents] and such persons' physician recommendation regarding the use of medicinal marijuana. [Respondents] shall maintain records showing monies expended and received as reimbursement of expenditures including overhead for their activities relating to the provision of medicinal marijuana. [¶] Except as set forth above, the terms and conditions of the preliminary injunction remain in effect."[3] The People appeal from this order modifying the injunction.

On this appeal from the order modifying the preliminary injunction order, there is no evidence of respondents' conduct or of any activity at the subject premises subsequent to the issuance of the preliminary injunction of November 4, 1996, or to the enactment of section 11362.5 and the trial court's modification order. The People are also seeking a permanent injunction in the trial court, which will involve a trial of respondents' conduct subsequent to the enactment of section 11362.5. (See, e.g., 6 Witkin, Cal. Procedure (4th ed. 1997) Provisional Remedies, § 287, pp. 228-229.)

II. DISCUSSION

A. *Overview*

It should first be noted that the complaint and all the competent evidence obtained and presented in support of the preliminary injunction involve conduct *prior* to the enactment of section 11362.5 and the order modifying the preliminary injunction. That conduct, which was criminal in nature, has been enjoined as requested by the People. The trial court did not actually dissolve the preliminary injunction. In essence, its modification order merely states the obvious: that respondents will not be in violation of the injunction if their conduct conforms to law. The trial court did not specify what conduct of respondents would or would not conform to the law, and thereby left the legal limits on respondents' conduct effectively undefined.

The People concede that the injunction should not prohibit respondents "from exercising rights as a patient or a bona fide primary caregiver,"

---

[3] It is questionable whether this incorporation of the "requirements of [section] 11362.5" in the modifying order was "definite enough to provide a standard of conduct for those whose activities are proscribed, as well as a standard for the ascertainment of violations of the injunctive order by the courts called upon to apply it. . . ." (*Pitchess* v. *Superior Court* (1969) 2 Cal.App.3d 644, 651 [83 Cal.Rptr. 35].) This case turned on what conduct section 11362.5 *did* permit. That conduct remained vague or undefined by the trial court's modifying order.

contending, however, that respondents are not primary caregivers, and that the modification order itself violates section 11362.5, to the extent the order allows or appears to allow marijuana sales, on any assertedly "non-profit" basis, to occur on an effectively legalized basis.

The preliminary injunction, the modification of which is in question here, was sought and was initially granted under the terms of section 11570, which provide in pertinent part: "Every building or place used for the purpose of unlawfully selling, serving, storing, keeping, manufacturing, or giving away any controlled substance, . . . is a nuisance which shall be enjoined, abated, and prevented, and for which damages may be recovered, whether it is a public or private nuisance."

■ As Division Four of the First Appellate District has held, section 11570 requires that the owners and operators of any " 'drug house' " be enjoined from continuing to operate such a drug sales facility. (See *Lew* v. *Superior Court* (1993) 20 Cal.App.4th 866, 870-871 [25 Cal.Rptr.2d 42] (*Lew*).)

However, respondents moved to modify the injunction under the terms of the new section 11362.5, which provides, in pertinent part: "(d) Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." ■ Under recent authority from Division Two of the First Appellate District, section 11362.5 provides a "partial defense" to charges of possession of marijuana, but not to charges of selling marijuana or possessing marijuana for sale. (See *People* v. *Trippet* (1997) 56 Cal.App.4th 1532, 1547, 1550 [66 Cal.Rptr.2d 559], review den. Nov. 25, 1997 (S064580) (*Trippet*).)

We are required to consider here, as a matter of first impression, the effect of section 11362.5 on section 11570, having in mind the holdings of *Lew* and *Trippet*. As we explain in reversing and remanding the trial court's order of modification, we conclude:

1. The sale and possession for sale of marijuana continue to be proscribed by sections 11360(a) and 11359 following enactment of section 11362.5. The lack of profit to the seller or possessor does not exempt such activities from prosecution under those sections or from the provisions of section 11570.

2. Section 11362.5(d) only exempts a patient or the patient's "primary caregiver" from prosecution under section 11357 (marijuana possession) and

section 11358 (marijuana cultivation) when either of them possess or cultivate marijuana only for the patient's personal medical purposes upon the written or oral recommendation or approval of a physician.

3. Respondents, operating a commercial enterprise selling marijuana to any qualified public purchaser, do not qualify as " 'primary caregiver[s]' " of each such purchaser under section 11362.5(e) by simply obtaining from the purchaser a designation as such prior to and as a condition of a marijuana sale to that person. One maintaining a source of marijuana supply, from which all members of the public qualified as permitted medicinal users may or may not discretionarily elect to make purchases, does not thereby become the party "who has *consistently* assumed responsibility for the housing, health, or safety" of that purchaser as section 11362.5(e) requires. (Italics added.) Respondents are, consequently, not immunized against the enforcement of section 11570 against them because they allegedly store, possess, and sell marijuana in the capacity of consistent primary caretakers of the health and safety of their numerous purchasers.

4. The general availability of injunctive relief under section 11570 against buildings and drug houses used to sell controlled substances is not affected by section 11362.5, and its application is not precluded on the record in the case at bench.

We will, accordingly, vacate the trial court's January 10, 1997, order modifying the preliminary injunction because it erroneously allowed marijuana sales on any assertedly "non-profit" basis, erroneously misconstrued the application of section 11362.5 in permitting criminally proscribed conduct of respondents to be resumed and continued, and improperly ruled on the legal issues before it.

B. *Marijuana Sales, Whether or Not for Profit, Continue to Be Proscribed in California Following Enactment of Section 11362.5*

1. *"Non-Profit" Sales or Furnishing of Marijuana*

■ The trial court received no new, competent evidence precipitating its order modifying the preliminary injunction which it had theretofore granted on affidavits uncontradicted by other evidence. The order of modification was effectively predicated upon the enactment of section 11362.5 in the interim.

The trial court's statements preceding its issuance of the order of modification, not literally included in the body of that order, clearly, albeit erroneously, set the stage for a principal contention respondents make on this

appeal: that section 11362.5 authorizes them to sell and furnish marijuana to patients or their primary caregivers[4] if they realize no profit therefrom.

The trial court said: "[I]t's not this Court's intent to say that [respondents] cannot reopen their doors [at the Cannabis Buyers' Club] . . . . [¶] It's my intent to say that to the extent that [respondents] do so, you better keep adequate records and *you had better be sure you are not making any kind of a profit.* . . . [¶] . . . [¶] So if somebody [operates a business distributing marijuana] and *does this for profit,* they are going to have big problems. They will be in violation of . . . Section 11360. They are going to be in violation of . . . Section 11359. *And that's still the law.*" (Italics added.)

The order modifying the preliminary injunction conforms with the court's statement of its intent in making it: "[Respondents] shall [in running their business] maintain records showing monies expended and received as reimbursement of expenditures *including overhead* for their activities relating to the provision of medicinal marijuana." (Italics added.)

Thus, the trial court clearly opined that section 11362.5 offered respondents a defense against charges of violating sections 11359 and 11360(a) (concededly "still the law") for possessing for sale and for selling and furnishing marijuana to their customers, if no profit was realized from those activities. Respondents espouse this position on appeal, although the modification order does not literally, and could not legally, authorize respondents to sell marijuana. It, inter alia, permits them, as does section 11362.5, only to "*possess* and *cultivate* medicinal marijuana for their personal medicinal use on the recommendation of a physician or for the personal medicinal use of persons who have designated the [respondents] as their primary caregiver . . ."[5] (italics added); and requires them, inter alia, to "maintain records showing monies expended and received as reimbursement of expenditures . . . ."

Even if section 11362.5 did, arguendo, allow such activities if conducted on a "non-profit" basis, the modifying order did not preclude respondents from profiting therefrom; e.g., no guidance was provided as to what "overhead" was, or what limitations were placed on items designated as such by respondents. They remained free under the modifying order to designate or change in their discretion their own salaries, bonuses, or remuneration, claim these as expense deductions against gross sales receipts, and report no

---

[4]We will discuss in part II.C. of this opinion, *post,* respondents' further and related contention that they became "primary caregiver[s]" to those to whom they sold and furnished marijuana, thereby legitimizing that activity.

[5]We will discuss and reject respondents' claim of "primary caregiver" status on this record, *post.*

profits. By such means, literal conformity could be made with the court's expressed intent respondents make no profit in the operation of their enterprise.

We find no support in section 11362.5 for respondents' argument that sales of marijuana on an allegedly nonprofit basis do not violate state laws against marijuana sales. No provision in section 11362.5 so states. Sections 11359 and 11360 explicitly forbid both the sale and the "giv[ing] away" of marijuana. Section 11362.5(d) exempts "a patient" and "a patient's primary caregiver" from prosecution for two specific offenses only: possession of marijuana (§ 11357) and cultivation of marijuana (§ 11358). It does not preclude prosecution under sections 11359 (possession of marijuana for sale) or 11360(a), which makes it a crime for anyone to "sell[], *furnish[], administer[], or give[] away*" marijuana (italics added). This is particularly significant in interpreting section 11362.5, because at subdivision (b)(2) the statute provides: "Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others . . . ." The Legislature had, theretofore, effectively determined in enacting sections 11359 and 11360 that the sale and giving away of marijuana, to which criminal penalties attach, constituted "conduct that endangers others . . . ."

As the *Trippet* court observed: "We note that [section 11362.5] specifically identifies only two penal provisions (out of five) from article 2 [of chapter 6] of division 10 of the Code . . . . It would have been a simple matter for the drafters to have included a reference to section 11360 within subdivision (d) of section 11362.5 [providing defenses to prosecution for violation of sections 11357 (possession) and 11358 (cultivation) of medicinal patients and their caretakers]. . . . We may not infer exceptions to our criminal laws when legislation spells out the chosen exceptions with such precision and specificity. [Citations.]" (56 Cal.App.4th at p. 1550.) We agree with this analysis of Division Two of this district, in which our distinguished assigned colleague concurred.

The laws prohibiting the distribution of controlled substances, including marijuana, do not distinguish between sales or gifts; the lack of a profit is irrelevant to prosecution under section 11360. There is, therefore, no "nonprofit" defense to the laws against marijuana sales, and the trial court erred in finding such defense existed. Recognition of such a nonprofit defense to effectively legalize marijuana sales would allow marijuana to be sold as a loss leader or at cost in co-ops, grocery stores, liquor stores, etc., or to be provided on a complimentary basis at bars, restaurants, night clubs, or casinos, to "patient[s]" who designated the marijuana seller as their "primary

caregiver." This sort of subterfuge is certainly not what the voters approved or intended when they enacted the limited compassionate use for medical purposes which is defined by section 11362.5.

### 2. Sale and Possession for Sale of Marijuana Remain Prohibited After the Passage of Section 11362.5

Respondents contend that if patients and primary caregivers can lawfully cultivate and possess marijuana when medically recommended, an ambiguity results because they expose to criminal prosecution any *third party* who provides the marijuana or seeds of the marijuana plant to those lawfully entitled to possess the same who accept them with criminal immunity.

We first observe, generally, that nonparity of criminal treatment of furnishers and users of marijuana has long existed in the law of this state. A user of marijuana possessing less than 28.5 grams, for example, commits a misdemeanor punishable only by a fine of $100. (§ 11357, subd. (b).) The person *selling* "any" marijuana, i.e., less than 28.5 grams, commits a felony punishable by two, three, or four years in state prison. (§ 11360(a); Pen. Code, § 17, subd. (a).)

If there is any claimed ambiguity in the statutory language, we may consider indicia of the voters' intent, which includes the analysis and arguments contained in the official ballot pamphlet. (*Legislature* v. *Eu* (1991) 54 Cal.3d 492, 504 [286 Cal.Rptr. 283, 816 P.2d 1309].) One of the arguments in favor of Proposition 215 states: "Proposition 215 allows patients to cultivate their own marijuana simply because federal laws *prevent the sale of marijuana, and a state initiative cannot overrule those laws.*"[6] (Ballot Pamp., Proposed Amends. to Cal. Const. with arguments to voters, Gen. Elec. (Nov. 5, 1996) p. 60, italics added.) An argument by the San Francisco District Attorney in rebuttal to opposition arguments states: "Proposition 215 does not allow 'unlimited quantities of marijuana to be grown anywhere.' It only allows marijuana to be grown for a patient's personal use. *Police Officers can still arrest anyone who grows too much, or tries to sell it.*" (*Id.* at p. 61, italics added.) The ballot pamphlet analysis by the Legislative Analyst states: "This measure amends state law to allow persons to grow or possess marijuana for medical use . . . . [¶] The measure also allows

---

[6]This may be a simplistic and misleading statement of federal law (see, e.g., *U.S.* v. *Huels* (7th Cir. 1994) 31 F.3d 476, 478 [cultivation of marijuana constitutes manufacturing, in violation of 21 U.S.C. § 841]; *U.S.* v. *Lennick* (9th Cir. 1994) 18 F.3d 814, 820, cert. den. 513 U.S. 856 [115 S.Ct. 162, 130 L.Ed.2d 100] [same]; cf. 21 U.S.C. § 844a [under certain circumstances, possession of "a personal use amount" of marijuana subjects possessor to maximum $10,000 civil penalty]), but it is nevertheless useful for determining the intent of the voters in enacting section 11362.5.

caregivers to grow and possess marijuana for a person for whom the marijuana is recommended. . . . [¶] . . . [¶] . . . [T]he measure specifies that growing and possessing marijuana is restricted to medical uses when recommended by a physician, *and does not change other legal prohibitions on marijuana . . . ."* (*Id.* at p. 59, italics added.)

One of the declared purposes of the statute is: "To encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana." (§ 11362.5(b)(1)(C).) If the statute authorized the sale or "affordable distribution" of marijuana to patients other than by personal cultivation, there would be no need to "encourage" the governments to implement such a plan.

The ballot pamphlet arguments, combined with the literal statutory language exempting patients and primary caregivers from prosecution only from sections 11357 (possession) and 11358 (cultivation), indicate that the intent of the initiative was to allow persons to cultivate and possess a sufficient amount of marijuana for their own approved medical purposes, and to allow "primary caregiver[s]" the same authority to act on behalf of those patients too ill or bedridden to do so. The statutory language limits the patient's access to marijuana to that which is personally cultivated by the patient or the patient's primary caregiver on behalf of the patient. If the drafters of the initiative wanted to legalize the sale of small amounts of marijuana for approved medical purposes, they could have easily done so. (See *Trippet, supra,* 56 Cal.App.4th at p. 1550.) The fact that they did not, and the reasons advanced in the ballot pamphlet in support of the initiative, indicated with certainty that its drafters were aware of both state and federal law prohibiting such sales and were attempting to avoid a conflict therewith.

Respondents, thus, urge that an initiative measure, presented to the electorate as one continuing to proscribe marijuana sales, must now be judicially interpreted to permit such sales because those immune from prosecution for its possession or cultivation will be inhibited in acquiring it if the provider risks prosecution in selling it; and the medical use of marijuana intended by section 11362.5 will be, accordingly, frustrated.[7]

By doing so, we would initiate a decriminalization of sales of and traffic in marijuana in this state. Whether that concept has merit is not a decision

---

[7]Without putting too fine a point on it, the criminalization of sales by section 11360(a) has not seemed to have grossly stemmed the tide of marijuana availability in this state, judging from the records we review.

for the judiciary. It is one the Legislature or the people by initiative are free to make. Proposition 215, in enacting section 11362.5, did not do so.

Thus, subject to the observations we will hereafter make relating to the reimbursement and status of *bona fide* primary caregivers (a category we will hold, *post*, that respondents do not meet), one who sells, furnishes, or gives away marijuana to a patient or a qualified primary caregiver authorized to acquire it for the patient's physician-approved medicinal use, violates the law. Those sellers have no defense because of section 11362.5 to charges of violation of sections 11359 or 11360(a).

C. *Respondents Are Not "[P]rimary [C]aregiver[s]" to Their Many Sales Customers, and Cannot Claim Exemption as Such From the Application of Section 11570*

The trial court on modifying its preliminary injunction opined: "The question has to be whether [respondents] can be the primary caregiver of a person. And it seems implicit in the statute [section 11362.5] that they can be, if they are so designated."

The trial court, thus, concluded, in error, that the thousands of persons who patronized respondents' club, who advised that a physician approved their marijuana use, and who designated respondents or their Cannabis Buyers' Club as their "primary caregiver" conferred that status on respondents. This, respondents urge, legitimizes their sale of marijuana to such purchasers.

Section 11362.5(e) defines " 'primary caregiver' " as "the individual designated by the person exempted under this section [i.e., the patient who, or for whose benefit, marijuana is possessed or cultivated for a physician-recommended or -approved medicinal use] who has *consistently* assumed responsibility for the *housing, health, or safety* of that person." (Italics added.)

We note that respondents' position on their claimed responsibility assumption for the customers they purport to be primary caretakers of has shifted. In their briefing, they relied primarily on the "health" provision of the primary caregiver definition to establish their primary caregiver capacity; i.e., arguing that by selling and furnishing marijuana at the club to a purchaser whenever that person chose to acquire it from them, they "consistently assumed responsibility" for that person's "health." (§ 11362.5(e).) At oral argument, respondents argued that they filled another and different niche in the primary caregiver definition by consistently assuming responsibility for the "safety" of that person in providing a safe place for marijuana

purchase, freeing the purchaser at their establishment from the dangers of being robbed or mugged during the course of purchase. Presumably, a similar argument could be made by a street dealer who provided a body guard to escort a purchaser home after the purchase.

Finally, respondents at argument contended that a marijuana user could have more than one marijuana supplier, and hence more than one caregiver for "health" purposes; i.e., that the responsibility for the marijuana purchaser's "health" could be spread among those he chose to purchase from, with each apparently serving as a statutory " 'primary caregiver.' "[8] (§ 11362.5(e).)

A person purchasing marijuana for medicinal purposes cannot simply designate seriatim, and on an ad hoc basis, drug dealers on street corners and sales centers such as the Cannabis Buyers' Club as the patient's "primary caregiver." The primary caregiver the patient designates must be one "who has *consistently* assumed responsibility for the housing, health, or safety of [the patient]." (§ 11362.5(e), italics added.) The record contains no evidence that either respondent falls within the statutory definition of "primary caregiver." It contains a purported declaration by respondent Peron, echoing the language of section 11362.5(e); but it is not made under penalty of perjury. Even if it were, it would not qualify Peron as the primary caregiver of the thousands of persons for whom he purports to provide health care.

Respondent Moore does *not* claim "primary caregiver" status. She also filed a purported declaration, again not under penalty of perjury, in which she states that her physician has recommended marijuana as a treatment, and that she wants to cultivate her own marijuana or have her designated caretaker cultivate it on those occasions when she is too ill to do so herself.[9] Although she states that the preliminary injunction prevents her from doing so, she does not explain how this is so. Ms. Moore is free under both the original preliminary injunction and as it was modified, to cultivate marijuana for her personal medical use if recommended by her physician, or to have a designated primary caregiver do so on her behalf.

Respondents simply argue that primary caregiver status was conferred on Peron because he contended, in an unverified statement, that he provided marijuana to sick individuals numbering in the thousands, who designated him as such as a condition to receiving it. The trial court's modifying order

---

[8]For example, respondents contended that if a patient designated a different drug dealer every day for 20 days as the patient's primary caregiver before purchasing marijuana, each dealer would be the patient's primary caregiver for that day.

[9]Whether the trial court relied on these unverified statements is not clear. Neither respondent's statement qualifies as a declaration under Code of Civil Procedure section 2015.5.

rested on the evidence it heard precipitating its preliminary injunction, and we must presume the court properly did not consider the unverified statement of Peron in the absence of any record indication of a contrary ruling on the People's motion to strike it.

However, even had the trial court considered Peron's unverified statement as evidence, reliance on its conclusory language that he became the primary caregiver to thousands of people would have resulted in error, as we explain.

The contention that respondents became "primary caregiver[s]" for patients authorized or approved to use marijuana for medical purposes simply because the sales are conditioned upon and preceded by respondents' designation by their customers as such, is clearly a subterfuge designed to subvert the plainly expressed intent of section 11362.5 continuing the proscriptions of marijuana sale and possession for sale.

The purchasing patient may never patronize respondents' establishment again; the designation of respondents as primary caregivers is admittedly transitory and not exclusive. On respondents' theory, the patient is admittedly free to designate on a daily basis a new primary caregiver dependent solely on whenever and from whom the patient decides to purchase marijuana.

Thus, the "consisten[cy]" of respondents' claimed health or safety primary caregiving of each customer is in reality a chimerical myth. Respondents' enterprise is simply a commercial one, open to the public, and one source of supply for any patient who chooses in the patient's sole discretion to shop there. Respondents cannot be the "consistent[]" primary caregivers of a patient's health or safety merely because they condition their marijuana sales to thousands of purchasers on receipt from them of a rote designation as such, tracking the language of section 11362.5.

We reject this contention. A contrary holding would entitle any marijuana dealer in California to obtain a primary caregiver designation from a patient before selling marijuana, and to thereby evade prosecution for violation of sections 11360 and 11359, which section 11362.5 left fully effective.

We cannot condone the perpetuation of such a deception on those voters who enacted Proposition 215, relying on its ballot arguments and legislative

digest assuring them that sales of marijuana would continue to be proscribed.[10] (See *Trippet, supra,* 56 Cal.App.4th at pp. 1546, 1550.)

### D. *The People's Contentions*

#### 1. *"[P]rimary [C]aregiver" Status*

The People contend, inter alia, that respondents operate an "institution" for the distribution of marijuana, and that only an "individual" qualifies under section 11362(e) as a primary caregiver. Section 11362.5(e) defines a primary caregiver as "the *individual* designated by the person exempted under this section *who* has consistently assumed responsibility for the housing, health, or safety of that person." (Italics added.) Established principles of statutory interpretation require that we adopt the " 'plain meaning' " of the words used therein, unless " 'repugnant to the general purview of the act.' " (*Tiernan* v. *Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 218-219 [188 Cal.Rptr. 115, 655 P.2d 317].) The term "individual" is generally recognized as a reference to a single person (see, e.g., Webster's New Internat. Dict. (3d ed. 1965) p. 1152, cols. 2-3), and the term "who" is a pronoun used to indicate a person or persons (*id.,* at p. 2611, col. 1). Requiring that an individual rather than an "institution" serve as primary caregiver is not repugnant to the general purview of the act.

However, this contention is premature. The modification order from which the People appeal does not authorize any corporation, partnership, unincorporated association, or other "institution" to function as a primary caregiver. The order states that "[*Respondents*] may possess and cultivate medicinal marijuana for their personal medicinal use on the recommendation of a physician or for the personal medicinal use of persons who have designated the [respondents] as their primary caregiver . . . ." (Italics added.)

#### 2. *Limits on "[P]rimary [C]aregiver" Status*

The People's next contention—that a primary caregiver cannot serve more than one patient—has no support in the statutory language. Section 11362.5

---

[10]At oral argument, respondents' counsel introduced the alleged lay drafter of Proposition 215, seeking permission for him to address us and present oral evidence of his intentions when he drafted the initiative in question here. We declined the offer because the drafter's secret intentions, not communicated to the voters, are not legally relevant in determining the intention of the voters in passing the initiative. If there is an arguable disparity in this poorly drafted initiative arising from the fact that it allowed cultivation and possession of marijuana in certain circumstances, without allowing sales, this is an inherent feature of the initiative as it was presented to the voters. We cannot add to the initiative a provision legalizing marijuana sales, in the guise of legal interpretation or based upon the drafter's private intentions.

allows the patient, i.e., the person whose physician has recommended or approved the use of marijuana for personal medical purposes, to designate a primary caregiver. There is no prohibition against designating as primary caregiver an individual who also serves in that capacity for others, provided the caregiver, unlike respondents, *consistently* provides for the housing, health, or safety of the designating patient. If we follow the People's argument to its logical conclusion, the director of a convalescent hospital or nursing home could not serve as primary caregiver for more than one resident patient; single persons caring for more than one aged and ailing parent or other relatives living with them could not qualify as the primary caregivers for their parents or other relatives in their care. Such a construction conflicts with a declared purpose of the statute: "To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate . . ." (§ 11362.5(b)(1)(A)), and where the patient designates a primary caregiver (§ 11362.5(e)).

### E. *Miscellaneous Considerations*

Although the sale and distribution of marijuana remain as criminal offenses under section 11360, bona fide primary caregivers for section 11362.5 patients should not be precluded from receiving bona fide reimbursement for their actual expense of cultivating and furnishing marijuana for the patient's approved medical treatment. This will "ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana . . . ." (§ 11362.5(b)(1)(A).)

For example, if a qualified patient is a semi-invalid and asks the primary caregiver to purchase fertilizer or special equipment to cultivate marijuana, merely reimbursing the caregiver for the purchase price thereof would be an adjunct to possession or cultivation under section 11362.5 and subject to the same affirmative defense. If the patient is incapacitated and thereby dependent upon the caregiver to cultivate or acquire the medicinal marijuana prescribed or approved for that patient's use, reimbursement for the caregiver's actual expenses in consistently doing so could be subject to the affirmative defense granted by section 11362.5.

As we have noted, the statute defines a primary caregiver as one "who has *consistently* assumed responsibility for the housing, health, or safety of [the patient]." (§ 11362.5(e), italics added.) Assuming responsibility for housing, health, or safety does not preclude the caregiver from charging the patient

for those services. A primary caregiver who *consistently* grows and supplies physician-approved or -prescribed medicinal marijuana for a section 11362.5 patient is serving a health need of the patient, and may seek reimbursement for such services.

None of this means that section 11362.5 legalized marijuana sales as respondents claim. The Legislature (and the people through the initiative process) hold plenary power to define crimes and establish penalties therefor. (*People* v. *Tanner* (1979) 24 Cal.3d 514, 519, fn. 3 [156 Cal.Rptr. 450, 596 P.2d 328]; *Tracy* v. *Municipal Court* (1978) 22 Cal.3d 760, 765 [150 Cal.Rptr. 785, 587 P.2d 227].) The initiative and section 11362.5 provide a defense for patients and primary caregivers only, to prosecution for only two criminal offenses: section 11357 (possession) and section 11358 (cultivation). Moreover, this defense is limited to the narrow circumstances approved by the voters in enacting section 11362.5, and does not allow the importation or cultivation of marijuana by large commercial enterprises, such as the Cannabis Buyer's Club.

## F.  *Conclusion*

Section 11362.5 provides a defense against prosecution only of patients and their primary caregivers and only for two criminal offenses regarding marijuana: section 11357 (possession) and section 11358 (cultivation). Sale and possession for sale of marijuana remain prohibited by sections 11360(a) and 11359 regardless of whether the seller obtains a net profit therefrom. Respondents do not consistently assume responsibility for the health or safety of their customers qualified for the medicinal use of marijuana, and hence do not qualify as their primary caretakers as contemplated by section 11362.5(e). Respondents did not carry their burden of demonstrating that a modification of the preliminary injunction was required, and none was required by reason of the passage of section 11362.5.

Consequently, the People are not precluded from enforcing the provisions of section 11570 against respondents; and the order modifying the preliminary injunction herein must, accordingly, be vacated.

## III.  DISPOSITION

The order modifying the trial court's preliminary injunction issued November 4, 1996, is vacated. The preliminary injunction previously in effect prior to the modification is ordered reinstated.

Haning, J., concurred.

KLINE, J.,* Concurring.—I concur in the judgment on the sole ground that respondents are not "primary caregivers" within the meaning of Health and Safety Code section 11362.5.

I think it unnecessary in this case to determine whether the sale and furnishing of marijuana remain absolutely prohibited after the enactment of Proposition 215.

By enacting that proposition, the voters of this state sought "[t]o ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief." (Health & Saf. Code, § 11362.5, subd. (b)(1)(A).) The "right to obtain" marijuana is, of course, meaningless if it cannot legally be satisfied.

The majority does not say qualified users may not obtain marijuana but it does say no one has the right to sell or furnish it to them, which is the functional equivalent. Obtaining marijuana from another may, however, be the only practical way to secure it for many seriously ill Californians who have a right to obtain and use the substance, because they and their primary caregivers may as a practical matter be unable to cultivate the plant or await harvest. Moreover, a person cannot even cultivate marijuana without first obtaining seeds, and the majority does not suggest how this may legally be accomplished.

At oral argument, the Attorney General took the position that persons unable to cultivate may be impliedly authorized under Proposition 215 to obtain marijuana from one who sells or furnish it, and immune from criminal prosecution, but that the sale or furnishing is not immune and may be prosecuted under section 11360 even though the buyer cannot be criminally charged. The Attorney General maintains, in other words, that a qualified patient or bona fide primary caregiver genuinely unable to cultivate marijuana can obtain the substance only by participating in what would remain an illegal street transaction.

Though the majority does not endorse this view, its opinion provides colorable support. I am not on this record prepared to resolve the knotty problem of whether and, if so, how a qualified patient or primary caregiver

---

*Presiding Justice of the Court of Appeal, First District, Division Two, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

unable to cultivate marijuana can otherwise legally obtain it. As we suggested in *People* v. *Trippet* (1997) 56 Cal.App.4th 1532 [66 Cal.Rptr.2d 559], "practical realities" dictate that there be some leeway in applying the statutory prohibitions pertaining to marijuana where strict enforcement would defeat or obstruct the purpose of Proposition 215. (56 Cal.App.4th at p. 1550.) Local governments in California are now exploring ways in which to responsibly implement the new law (as, for example, through licensing ordinances) so as to relieve those medically in need of marijuana but unable to cultivate it from the need to do so. I do not think we should make gratuitous blanket determinations which might prematurely interfere with those efforts.

Respondents' petitions for review by the Supreme Court were denied February 25, 1998.