Filed 10/28/13  P. v. Nivison CA3
Opinion following rehearing

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C071145 |
| Plaintiff and Respondent, | (Super. Ct. No. 12F00948) |
| v. | OPINION AFTER REHEARING |
| RONALD CLAIRE NIVISON, | |
| Defendant and Appellant. | |

Twenty-six-year-old Ronald Nivison's sole defense at his trial for possession of six and one-half pounds of marijuana for sale was that he grew and packaged it for medicinal purposes for himself and his father, both of whom had medical marijuana identification cards, and he had no intent to sell it.  On appeal, he contends the trial court's failure to instruct the jury sua sponte that the Medical Marijuana Program (Health & Saf. Code, § 11362.7 et seq.) can provide a defense to possession for sale constitutes reversible error.  In the absence of a request by defendant for a pinpoint instruction, we conclude the trial court did not have a sua sponte obligation to instruct,

1

and in any event, the failure to clarify the nuances of how the existence of the Medical Marijuana Program might negate intent would have been harmless beyond a reasonable doubt. The judgment is affirmed.

## FACTS

In February 2012 defendant was on probation for commercial (second degree) burglary and unemployed. He testified he smoked about 10 joints of marijuana a day to mitigate his chronic back and elbow pain, migraine headaches, and insomnia. Without a job, he could not afford to buy his marijuana, so he had planted 12 marijuana plants in the spring of 2011 and began harvesting the ones that survived later that fall; he "pulled the last plant out of the ground" in December. He lived in a small trailer parked in his father's backyard.

A deputy sheriff conducted a probation search of the trailer on February 2, 2012. He found a plastic Tupperware storage tub containing approximately 1,300 grams of marijuana, and 19 bags of marijuana, some of which were "Ziplock" bags, some of which were "biohazard" bags, and some of which were garbage-type bags. Some of the bags were labeled with the strain of marijuana they contained. Others were labeled with quantities that are typically sold on the street, but the actual weight of the marijuana did not correspond to the labels. The total weight of all the marijuana inside the trailer was 2,950.85 grams, or approximately six and one-half pounds, with a street value between $20,000 and $40,000.

The deputy also found tare weights used for calibrating a scale, along with all of the packaging materials. In the bathroom located two or three steps from the packaging area, he confiscated a shotgun and a rifle, both loaded. He opined that based on the volume of marijuana, coupled with the tare weights, packaging, and guns, defendant possessed the marijuana primarily for sale.

The deputy did not find any of the other accoutrements typical of a sales operation, such as a cell phone, scale, pay-owe sheets, or cash. There had been no reports

2

of foot traffic to and from the trailer. Nevertheless, he explained to the jury that the marijuana, like lettuce or broccoli, would degrade over time. The marijuana he found in the trailer would have lasted only four to six months because of the way in which it was packaged.

The prosecutor played two tape recordings of defendant talking to his girlfriend and to an unidentified male during jail visits. In the first, defendant asked his girlfriend to tell his father to upgrade his "prop 215" card to allow him to have more than eight ounces of marijuana in his possession. In the second, he maligned the state of California for paying half of the cost of medical marijuana through Medi-Cal. Laughing, he declared that when he was released he was going to get "so fucking stoned it ain't even gonna be funny man."

But defendant told the jury he did not intend to sell the marijuana he cultivated. He grew what he hoped would last a year. The deputy sheriff testified that an average user smokes between 6 and 8 grams of marijuana a day. If one individual were to consume 8 grams of marijuana a day, the marijuana found in the trailer would last for 368.8 days. But defendant testified that he planned to share it with his father.

Defendant also explained the presence of the tare weights and the biohazard baggies. On occasion, he purchased the contents of storage units, and in one of the units he found the tare weights he later used to weigh down the branches of his marijuana plants. He obtained the biohazard, or "medical," bags from a house he was employed to clean out.

The jury found defendant guilty of possession of marijuana for sale while armed with a firearm. (Health & Saf. Code, § 11359; Pen. Code, § 12022, subd. (a)(1).) Defendant appeals.

## DISCUSSION

Defendant contends the trial court had a sua sponte obligation to instruct the jury that California's Medical Marijuana Program (MMP) provides a defense to a charge of

3

possession of marijuana for sale. This position is at odds with the position he took at trial. He misunderstands the scope of a trial court's obligation to instruct sua sponte where, as here, the defense was asserted to negate an element of the crime.

Utilizing CALCRIM No. 2352, the court instructed the jury on the elements of possession of marijuana for sale as follows: "The defendant is charged in Count One with possessing for sale marijuana, a controlled substance in violation of Health and Safety Code section 11359.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1.    The defendant possessed a controlled substance;

"2.    The defendant knew of its presence;

"3.    The defendant knew of the substance's nature or character as a controlled substance;

"4.    When the defendant possessed the controlled substance, he intended to sell it;

"5.    The controlled substance was marijuana;

"AND

"6.    The controlled substance was in a usable amount.

"*Selling* for the purpose of this instruction means exchanging the marijuana for money, services, or anything of value. . . ."

The jury was also instructed according to CALCRIM No. 2375 on simple possession of marijuana, a lesser included offense of possession for sale. Again the court identified the elements of the crime. But the court also explained that possession could be lawful under the Compassionate Use Act of 1996. (Act; Health & Saf. Code, § 11362.5.) The court stated: "Possession of marijuana is lawful if authorized by the Compassionate Use Act. In order for the Compassionate Use Act to apply, the defense must produce evidence tending to show that his possession of marijuana was for personal medicinal purposes with a physician's recommendation or approval. The amount of

4

marijuana possessed must be reasonably related to the patient's current medical needs. The People have the burden of proving beyond a reasonable doubt that the defendant's possession was unlawful under the Compassionate Use Act. If the People have not met this burden, you must find the defendant not guilty of this crime." (CALCRIM No. 2375.)

The duty to instruct sua sponte is limited to those " 'general principles which are necessary for the jury's understanding of the case. [The trial court] need not instruct on specific points or special theories which might be applicable to a particular case, absent a request for such an instruction.' [Citations.] Alternatively expressed, '[i]f an instruction relates "particular facts to the elements of the offense charged," it is a pinpoint instruction and the court does not have a sua sponte duty to instruct.' (*People v. Middleton* [(1997)] 52 Cal.App.4th [19,] 30.)" (*People v. Garvin* (2003) 110 Cal.App.4th 484, 488-489.)

The Act, adopted by the voters as a state initiative, is narrowly drafted and did not "decriminalize marijuana on a wholesale basis." (*People v. Urziceanu* (2005) 132 Cal.App.4th 747, 772-773 (*Urziceanu*).) The purposes of the Act are: "(A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief. [¶] (B) To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction." (Health & Saf. Code, § 11362.5, subd. (b)(1).) The Act did not provide a defense to possession of marijuana for sale. (*People ex rel. Lungren v. Peron* (1997) 59 Cal.App.4th 1383, 1389.)

The Legislature, however, sought to clarify the scope of the Act and to promote its uniform and consistent application by enacting the MMP.  The steps the people and the Legislature took in pursuit of their stated objectives in the Act and the MMP were modest, limited, and specific.  (*City of Riverside v. Inland Empire Patients Health & Wellness Center, Inc.* (2013) 56 Cal.4th 729, 762-763.)  For the first time on appeal, defendant now contends it is the MMP, not the Act, that provides a defense to possession for sale.

Defendant's sole defense at trial was that he possessed the marijuana for medicinal purposes for himself and for his father, and he did not intend to sell it.  Thus, he sought to negate an essential element of the crime of possession for sale—that he intended to sell it.  He did not raise or rely on the Act or the MMP as an affirmative defense.  The distinction is crucial in defining a court's obligation to instruct sua sponte.  " ' "[W]hen a defendant presents evidence to attempt to negate or rebut the prosecution's proof of an element of the offense, a defendant is not presenting a special defense invoking *sua sponte* instructional duties.  While a court may well have a duty to give a 'pinpoint' instruction relating such evidence to the elements of the offense and to the jury's duty to acquit if the evidence produces a reasonable doubt, such 'pinpoint' instructions are not required to be given *sua sponte* and must be given only upon request." ' [Citation.]"  (*People v. Anderson* (2011) 51 Cal.4th 989, 996-997.)

In *People v. Saille* (1991) 54 Cal.3d 1103 (*Saille*), our Supreme Court held that evidence "proffered in an attempt to raise a doubt on an element of a crime which the prosecution must prove beyond a reasonable doubt" may, but only upon request, justify the giving of a pinpoint instruction that "does not involve a 'general principle of law' as that term is used in the cases that have imposed a sua sponte duty of instruction on the trial court."  (*Id.* at p. 1120.)  "Such instructions relate particular facts to a legal issue in the case or 'pinpoint' the crux of a defendant's case, such as mistaken identification or alibi.  [Citation.]  They are required to be given upon request when there is evidence

supportive of the theory, but they are not required to be given sua sponte." (*Id.* at p. 1119.)

The court applied the same principle more recently in *People v. Jennings* (2010) 50 Cal.4th 616, 674-675. In *Jennings*, the defendant claimed the victim died from an overdose of sleeping pills and on appeal argued the trial court had a sua sponte obligation to instruct on the defense of accident. But the defendant's claim, the court held, "amounts to a claim that defendant and Michelle lacked the intent to kill necessary for first degree premeditated murder and the torture-murder and murder-by-poison special circumstances. As such, instructing the jury pursuant to CALJIC No. 4.45 would have constituted a pinpoint instruction highlighting a defense theory that attempted to raise a doubt concerning an element (intent) of a crime that the prosecution must prove beyond a reasonable doubt. The burden therefore was upon defendant to request that the jury be instructed pursuant to CALJIC No. 4.45 . . . ." (*Jennings*, at p. 675.)

Similarly, in arguing that the MMP provides a defense to possession for sale, defendant is attempting to negate the essential element of intent. The record is clear that defendant was not relying on the MMP at trial as an affirmative defense. To the contrary, defense counsel stated expressly, "I can interject here in that I am not planning on presenting any evidence of the medical marijuana defense for the sales charge. It's more of just a circumstantial evidence as to -- [¶] . . . [¶] -- look at the evidence. Definitely not that it's an actual defense to sales 'cuz I agree it's not." In his opening statement, he explained to the jury that defendant was in possession of a large quantity of marijuana for his and for his father's personal use.

Defendant's testimony was to the same effect. As set forth above, he testified that he and his father had medical marijuana cards authorizing their use of marijuana to alleviate their pain and suffering. He denied growing the marijuana to sell it.

7

In closing argument, defense counsel recognized the difference between negating intent and raising an affirmative defense. He again argued that defendant possessed the marijuana for his and his father's personal use. "And the law is that Mr. Nivison, Junior had a medical marijuana card. His father had a medical marijuana card, which gives them the authority to possess marijuana for medical use, for reasonable current medical needs. [¶] There is no doubt, and I would never tell you that a defense to sales is medical marijuana. But the defense to the intent to sell marijuana is why does he have so much marijuana?"

Defense counsel did not request a pinpoint instruction on the fine nuance allowing him to negate intent with evidence that he possessed the marijuana under the MMP, even though neither the Act nor the MMP provided an affirmative defense to possession for sale. He argues now that the jurors would have been confused because they were instructed that the Act provided a defense to possession, but they were not told his possession for medicinal purposes could negate the essential element of intent, a confusion compounded by the prosecutor's argument. He certainly had the right to attempt to clarify any potential misunderstanding by asking the court to relate his evidence of medicinal use to the mental element required for the charged crime and to thereby "pinpoint" the crux of his defense. But we reject the notion the trial court had a sua sponte obligation to do so.

Moreover, we conclude that any failure to request a pinpoint instruction or any failure to give such an instruction sua sponte was harmless beyond a reasonable doubt. First, the circumstantial evidence defendant possessed the marijuana for sale was overwhelming. He was unemployed and therefore had a motive to sell the marijuana in his possession, which had a street value between $20,000 and $40,000. The marijuana was in a variety of baggies alongside tare weights used for calibrating a scale and all in close proximity to two loaded firearms. And there was expert testimony that the quality of the marijuana would degrade rather quickly the way it was packaged, thereby

8

diminishing the likelihood that he had grown enough for his and his father's personal use for a year.

Second, the purported instructional gap did not impair defendant's ability to introduce evidence that he possessed the marijuana for his personal use under the MMP and the Act, nor did it curtail his ability to argue, as he did, that his medicinal use of marijuana negated an intent to sell. Indeed, that was the very crux of the defense he asserted at trial. No reasonable juror would have been confused or missed the point.

Third, the jury was properly instructed on the elements of possession for sale, possession, and the limited immunity provided by the Act and the MMP. CALCRIM No. 2352, as read by the court, explained the essential elements of the offense of possession for sale, including the requirement that the prosecution must prove "[w]hen the defendant possessed the controlled substance, he intended to sell it." Nothing in the other instructions diminished the prosecution's burden of proving defendant's intent, and nothing in the Act or the MMP provided him immunity for possessing marijuana with the intent to sell it.

Thus, we conclude the jury was properly instructed, defendant was afforded the opportunity to admit any and all evidence of his participation in the MMP to negate intent, and defense counsel argued that his possession was for purposes of personal use and not for the purpose of sales. The pinpoint instruction he proposes for the first time on appeal would have been duplicative of the instructions given and would have added little, if anything, to the jury's understanding that to find defendant guilty of possession of marijuana for sale, it was required to find that he possessed the six and one-half pounds not for his and his father's personal use, but with the intent to sell it. There was no error, and even if we take the next hypothetical step and assume there was, any error was harmless beyond a reasonable doubt.

Defendant also contends that if he forfeited his so-called MMP defense to possession for sale, he was denied his constitutional right to effective assistance of

9

counsel.  In order to sustain his ineffectiveness claim, he must demonstrate prejudice; in other words, he must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  (*Strickland v. Washington* (1984) 466 U.S. 668, 694 [80 L.Ed.2d 674, 698].)  As demonstrated above, the failure to request a pinpoint instruction does nothing to undermine our confidence in the verdict.  The jury was properly instructed that an essential element of the crime was intent to sell.  Defendant testified, and his lawyer argued, that he had no intent because he possessed the marijuana for medicinal purposes and he had a valid marijuana card.  There is no reasonable probability that the type of pinpoint instruction suggested by appellate counsel would have changed the result.  In the absence of prejudice, defendant's ineffectiveness claim fails too.

## DISPOSITION

The judgment is affirmed.


                                              RAYE            , P. J.



We concur:



        NICHOLSON        , J.



        HULL            , J.


10