[No. C032873. Third Dist. Dec. 26, 2002.]

THE PEOPLE, Plaintiff and Respondent, v.
ROBERT MICHAEL GALAMBOS, JR., Defendant and Appellant.

**[Opinion certified for partial publication.*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part IV of the Discussion.

1148

1150

**COUNSEL**

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney General, Stephen G. Herndon and Rachelle A. Newcomb, Deputy Attorneys General, for Plaintiff and Respondent.

William G. Panzer for Defendant and Appellant.

**OPINION**

**KOLKEY, J.**—Proposition 215, also known as the Compassionate Use Act of 1996, grants a limited immunity from prosecution for the cultivation or

possession of marijuana by either a patient or a patient's primary caretaker, "who possesses or cultivates [the] marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (Health & Saf. Code, § 11362.5, subd. (d).)[1] Defendant Robert Michael Galambos, Jr., claimed to be cultivating marijuana for himself and a cannabis buyers' cooperative for his own and others' medical use. Following a preliminary hearing, the trial court refused to extend the immunity afforded by Proposition 215 to cover defendant's cultivation of marijuana for the cooperative and disallowed his common law defense of medical necessity. A jury convicted him of marijuana cultivation (§ 11358).

This appeal requires us to decide whether the limited statutory immunity afforded under Proposition 215 is compatible with the common law defense of medical necessity or, alternatively, the broader construction of the proposition advocated by the defendant.

We conclude that judicial recognition of the broader and different immunity afforded by a medical necessity defense—which would not require a physician's recommendation, would excuse crimes other than the cultivation or possession of marijuana, and would extend the immunity beyond patients and their primary caretakers—would break faith with the California electorate in light of their adoption of the more narrow legislative exception to our criminal drug laws expressed by Proposition 215. An unexpressed common law defense should not be engrafted onto a statutory scheme that embodies an inconsistent policy determination.

We also reject defendant's claim that the limited immunity afforded under Proposition 215 to patients and primary caregivers should be extended to those who supply marijuana to them. The voter-approved statute carefully delimits the proffered immunity to patients and their primary caregivers. (§ 11362.5, subd. (d).) Neither the language of the proposition nor its ballot materials suggest any intent to extend its protections to those who do not qualify thereunder but who purport to supply marijuana to those who do. To the contrary, the proponents' ballot arguments reveal a delicate tightrope walk designed to induce voter approval, which we would upset were we to stretch the proposition's limited immunity to cover that which its language does not.

We also conclude that the trial court did not abuse its discretion when it held a preliminary hearing to determine the admissibility of defendant's proposed defenses.

Finally, in the unpublished portion of our decision, we reject defendant's claims that Proposition 215 did not give him fair notice that his actions were unlawful.

---

[1]Unless otherwise designated, all statutory references are to the Health and Safety Code.

## FACTUAL AND PROCEDURAL BACKGROUND

### I. *The Underlying Facts*

#### A. *Defendant's Marijuana Cultivation*

Since 1991, defendant has been eating and smoking marijuana, which he claims is effective for relieving a variety of symptoms caused by an earlier automobile accident.

In 1996, defendant began growing marijuana on his mother's property in Calaveras County to help himself and others with their health problems. Although defendant lost 80 percent of his first crop, he harvested approximately seven pounds in the fall of 1996.

In 1996, defendant became involved in fundraising efforts for Proposition 215, which California voters approved at the November 5, 1996 General Election, thereby enacting section 11362.5, which became effective the next day.[2] After the proposition passed, defendant unsuccessfully sought a recommendation for medical marijuana use from physicians in his area. He did not obtain a recommendation, however, until after his arrest in this case.

---

[2]Section 11362.5 provides:

"(a) This section shall be known and may be cited as the Compassionate Use Act of 1996.

"(b)(1) The people of the State of California hereby find and declare that the purposes of the Compassionate Use Act of 1996 are as follows:

"(A) To ensure that seriously ill Californians have the right to obtain and use marijuana for medical purposes where that medical use is deemed appropriate and has been recommended by a physician who has determined that the person's health would benefit from the use of marijuana in the treatment of cancer, anorexia, AIDS, chronic pain, spasticity, glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief.

"(B) To ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction.

"(C) To encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana.

"(2) Nothing in this section shall be construed to supersede legislation prohibiting persons from engaging in conduct that endangers others, nor to condone the diversion of marijuana for nonmedical purposes.

"(c) Notwithstanding any other provision of law, no physician in this state shall be punished, or denied any right or privilege, for having recommended marijuana to a patient for medical purposes.

"(d) Section 11357, relating to the possession of marijuana, and Section 11358, relating to the cultivation of marijuana, shall not apply to a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician.

"(e) For the purposes of this section, 'primary caregiver' means the individual designated by the person exempted under this section who has consistently assumed responsibility for the housing, health, or safety of that person."

The Oakland Cannabis Buyers' Cooperative (the Oakland Cooperative or the Cooperative) was one of a number of organizations that distributed marijuana for medical purposes. The club's membership was 200 in the beginning of 1997 but increased to 1,500 by the end of 1997. The Cooperative obtained marijuana from several hundred growers.

In May 1997, defendant began growing a second marijuana crop. In June 1997, he contacted the Oakland Cooperative. The parties executed a certificate by which they agreed that all the marijuana that defendant grew would be designated for the Cooperative for medical use. To cover his expenses, defendant wanted—but did not have an opportunity to discuss—compensation for the marijuana that he would supply. This objective became moot, however, when the marijuana that defendant initially brought to the Cooperative in 1997 was rejected as too moldy.

### B. Discovery of Defendant's Marijuana Cultivation

In an aerial overflight in June 1997, Calaveras County Sheriff's Deputy Eddie Ballard detected a marijuana cultivation site at a 40-acre rural property. After several visits to the site for further observation and after sighting defendant on one occasion, Ballard obtained a search warrant that he and other officers served on defendant at the site the following month, arresting him at the same time.

One of the officers, Calaveras County Sheriff's Lieutenant Brian Walker, counted 382 marijuana plants growing in two gardens, one containing smaller plants in greenhouses and the other larger plants in both the ground and in garbage sacks. At various places around the site, Walker also found six and one-half pounds of dried marijuana in half-pound baggies deposited in buckets, as well as marijuana seeds in bags. Finally, Walker found in a nearby shed evidence of defendant's involvement in the marijuana cultivation. This included defendant's wallet, which contained an identification card, a business card for a "cannabis consultant," and a handwritten note calculating grams and pounds of marijuana.

### II. The Legal Proceedings

Defendant was charged with marijuana cultivation (§ 11358) in count I and possession of marijuana for sale (§ 11359) in count II.

Defendant raised two affirmative defenses: the common law defense of medical necessity and the limited immunity afforded under Proposition 215.

But the People moved in limine to exclude both defenses, requesting a preliminary hearing to determine whether the evidence was sufficient to present such defenses to the jury.

Over defendant's objections, the trial court granted the request for a hearing under Evidence Code section 402, subdivision (b),[3] stating that "because of the novelty of the defenses in this case . . . a 402 hearing . . . is necessary to avoid the prejudicial effect upon jurors . . . of actually hearing evidence if it is going to be ultimately excluded by the court." Defense counsel proceeded by an offer of proof, seeking to demonstrate an evidentiary foundation for the defenses.

The court disallowed the common law defense of medical necessity, ruling that defendant had failed to make a sufficient showing of the elements of such a defense. But the trial court did grant defendant's request to instruct the jury on the limited immunity available under Proposition 215. Nonetheless, the court limited that defense to defendant's cultivation and possession of marijuana for his personal medical use and declined to extend the defense to the cultivation of marijuana for the Oakland Cooperative, finding that Proposition 215 did not support defendant's assertion that he was the "primary caregiver" of the Cooperative's members and thus eligible for the exemption under the proposition. The court ultimately instructed the jury on the statutory defense afforded by Proposition 215 by using CALJIC No. 12.24.1, rather than defendant's proposed instruction.

Separately, the trial court denied defendant's motion to dismiss the charges based on the due process clause of the Fourteenth Amendment, which motion contended that defendant had been "deprived [of] fair notice as to what constitute[d] illegal activity" under section 11362.5. The court later refused defendant's proposed jury instruction regarding the absence of such notice.

Ultimately, the jury convicted defendant of marijuana cultivation (§ 11358), but deadlocked on the second count of possession for sale (§ 11359). The People then filed an amended information, adding a third count of possession of more than 28.5 grams of marijuana (§ 11357, subd. (c)), to which defendant pleaded guilty in exchange for a dismissal of the deadlocked count. The court granted defendant five years' probation on terms and conditions that included nine months in the county jail.

On appeal, defendant contends that:

(1) The court erred by holding a preliminary hearing to determine the admissibility of the evidence for defendant's proposed defenses;

---

[3]Evidence Code section 402 provides in relevant part:

"(a) When the existence of a preliminary fact is disputed, its existence or nonexistence shall be determined as provided in this article.

"(b) The court may hear and determine the question of the admissibility of evidence out of the presence or hearing of the jury . . . ."

(2) It erred by finding that defendant failed to proffer sufficient evidence to warrant a jury instruction for his defense of medical necessity;

(3) It improperly failed to extend Proposition 215 to exempt from prosecution those who supply medicinal cannabis to patients and caretakers; and

(4) It erroneously refused to instruct the jury that the defendant must be acquitted if Proposition 215 failed to give him fair notice as to what constituted illegal conduct.

## DISCUSSION

### I. *Evidence Code Section 402 Hearing*

Defendant first argues that "[t]he trial court erred in its ruling ordering an evidentiary hearing under Evidence Code [section] 402 to review [defendant's] affirmative defenses." Defendant contends that the hearing "forc[ed] him to prematurely disclose his affirmative defenses" and that "[w]hether enough evidence ha[d] been produced . . . to merit either a necessity instruction or a medical use instruction, should only [have] be[en] addressed and assessed in the course of a trial proceeding."

In fact, defendant was not forced to prematurely disclose his affirmative defenses. Instead, at the trial readiness conference, defense counsel volunteered defendant's intention to rely on the defenses of common law necessity and Proposition 215. Thus, the only issue is whether it was error for the trial court to hold a preliminary hearing to determine whether there was sufficient evidence to allow the presentation of those previously disclosed defenses.

Evidence Code section 402 provides a procedure for the trial court to determine outside the presence of the jury whether there is sufficient evidence to sustain a finding of a preliminary fact, upon which the admission of other evidence depends. However, a "preliminary fact" is broadly defined as "a fact upon the existence or nonexistence of which depends the admissibility or inadmissibility of evidence." (Evid. Code, § 400.) And "[t]he phrase 'the admissibility or inadmissibility of evidence' includes the qualification or disqualification of a person to be a witness and the existence or nonexistence of a privilege." (*Ibid.*) Accordingly, the existence of facts constituting an element of a defense literally falls within the definition of "preliminary fact" because the admissibility of the evidence comprising the entire defense depends on it.

Admittedly, determining the existence of an element of a defense, upon which depends the admission of the evidence comprising the entire defense,

is not the most common use of a hearing under Evidence Code section 402. The procedure is more commonly used to determine, for instance, the existence of a privilege, the qualification of a witness, the admissibility of a confession, or the authenticity of a writing. (Evid. Code, §§ 400, 402, subd. (b), 403, subd. (a)(2), (3).) But use of such a procedure to determine the existence of a defense is not qualitatively different from its use to determine the existence of a privilege, which is specifically identified as a proper use. In one case, the hearing determines whether all of the elements of the relevant privilege can be made out before the evidence protected by the privilege is either excluded or admitted. In the other case, the hearing determines whether all of the elements of a relevant defense can be made out before the evidence of that defense is either excluded or admitted. The primary difference is that successfully making out the elements of the privilege excludes the evidence, whereas successfully making out the elements of the defense admits it.[4] But in both cases, the admissibility of the proffered evidence depends upon the sufficiency of the evidence to sustain a finding of each element of the privilege or defense. (See Evid. Code, § 403, subd. (a)(1).) And in both cases, the purpose of the preliminary hearing is to avoid the prejudice associated with the introduction of inadmissible evidence.

The right to subject defenses to the gatekeeping procedure under Evidence Code section 402 is also demonstrated by the procedure's express reference to its use for determining whether the evidence is relevant. Evidence Code section 403, subdivision (a)(1), provides in relevant part that "the proffered evidence is inadmissible unless the court finds that there is evidence sufficient to sustain a finding of the existence of the preliminary fact, when: [¶] (1) The relevance of the proffered evidence depends on the existence of the preliminary fact . . . ." In this case, the relevance of the proffered defenses depends upon the existence of facts sufficient to establish the defenses' elements.

However, we need not determine whether the trial court can properly exercise its discretion to subject *any* defense to a hearing under Evidence Code section 402. We conclude that at least where the defense is novel and raises questions whether there is sufficient evidence to sustain each element of the proffered defense—as here—such a hearing is justified so that otherwise irrelevant and confusing matter is not placed before the jury. Often

---

[4]There is admittedly a more subtle difference. In the case of a privilege, the court will determine the *existence* of the preliminary fact (Evid. Code, § 405), whereas in the case of a relevant defense, the court only finds that there is *sufficient evidence to sustain a finding* of the existence of the preliminary fact (Evid. Code, § 403). But the procedure for holding preliminary hearings expressly recognizes and authorizes this distinction depending upon the right of the jury to make the ultimate finding of the existence of the preliminary fact.

novel, necessity defenses in particular risk the presentation of otherwise irrelevant and confusing evidence to the jury if the defense cannot be established. And it is the novelty of the defense that raises the prospect that the defendant might fail to establish its elements, and in such a case, that very novelty would also allow the jury to hear irrelevant evidence that would confuse the issues.

It is thus no coincidence that a preliminary hearing, or similar procedure, has often been invoked to determine the admissibility of the common law defense of necessity. (See, e.g., *People v. Trippet* (1997) 56 Cal.App.4th 1532, 1538-1540 [66 Cal.Rptr.2d 559] (*Trippet*) [upholding the trial court's ruling rejecting the medical marijuana necessity defense at an Evid. Code § 402 proceeding]; *People v. Patrick* (1981) 126 Cal.App.3d 952, 960 [179 Cal.Rptr. 276] [trial court concluded that defendant's offer of proof for a necessity defense failed to demonstrate a sufficient emergency to justify a jury instruction]; *People v. Slack* (1989) 210 Cal.App.3d 937, 939-940 [258 Cal.Rptr. 702] [trial court properly refused to instruct on a necessity defense based on defendant's offer of proof]; *In re Eichorn* (1998) 69 Cal.App.4th 382, 390 [81 Cal.Rptr.2d 535] [offer of proof sufficient to present necessity defense]; see also *People v. Werber* (1971) 19 Cal.App.3d 598, 607-610 [97 Cal.Rptr. 150] [offer of proof of defense of religious use of marijuana is a more expedient method for considering the defense than allowing evidence of defendant's use of marijuana as a religious practice and then striking the evidence as insufficient to establish the defense].)

Moreover, the California Supreme Court has recommended the use of the procedure under Evidence Code section 402 for novel matters. In *People v. Bledsoe* (1984) 36 Cal.3d 236, 245, footnote 6 [203 Cal.Rptr. 450, 681 P.2d 291], the defendant argued that the trial court erred by refusing to hold a preliminary hearing on the admissibility of evidence of rape trauma syndrome. The Supreme Court held that the admission of the evidence was nonprejudicial error, but that "in view of the novelty of the proposed evidence and the advantages a[n Evidence Code] section 402 hearing affords for providing the parties an opportunity to make a full record on the issue . . . it might have been preferable for the court to have proceeded with such a preliminary hearing out of the jury's presence . . . ." (*Ibid.*; see also *McCleery v. City of Bakersfield* (1985) 170 Cal.App.3d 1059, 1074-1075 & fns. 11 & 12 [216 Cal.Rptr. 852].)

Accordingly, we can see a benefit, and no prejudice, in initially determining at a preliminary hearing whether to allow evidence of a novel defense, rather than awaiting testimony at trial that might prove to be both irrelevant and confusing. In this case, the court, the prosecutor, *and* defense counsel all

agreed that the application of defendant's common law and statutory defenses to a *supplier* of marijuana to a buyers' club was novel.

■ Defendant nonetheless maintains that the procedure under Evidence Code section 402 violated his constitutional rights to due process and against compelled testimony by "essentially forcing a defendant into a deposition before these issues have been presented to a trier of fact." But defendant does not develop this argument with citations and analysis and thus has waived it. (*People v. Turner* (1994) 8 Cal.4th 137, 214, fn. 19 [32 Cal.Rptr.2d 762, 878 P.2d 521].)

In any event, any Fifth Amendment concerns arising from the premature presentation of defendant's proposed testimony—which issue we need not decide today—could have been obviated by a procedure that defendant chose not to invoke: Where an offer of proof of a defendant's testimony is required, the California Supreme Court has endorsed the use of an in camera proceeding in which the court also seals the record for appellate review. This procedure prevents the premature disclosure of the defendant's evidence and thus safeguards the privilege against self-incrimination. (See *People v. Collins* (1986) 42 Cal.3d 378, 393-394 [228 Cal.Rptr. 899, 722 P.2d 173]; *People v. Superior Court (Barrett)* (2000) 80 Cal.App.4th 1305, 1320-1321 [96 Cal.Rptr.2d 264] [trial court correctly allowed defendant to present relevancy theories of evidence at in camera hearing to protect against self-incrimination]; *Shleffar v. Superior Court* (1986) 178 Cal.App.3d 937, 945, fn. 8 [223 Cal.Rptr. 907] [any possibility that the offer of proof by defendant "might violate defendant's privilege against self-incrimination can be obviated through the conducting of an in[] camera hearing"].)

■ We conclude that the trial court's decision to hold a preliminary hearing to determine the sufficiency of defendant's evidence for his proposed defenses was not an abuse of discretion.

## II. *The Medical Necessity Defense*

Defendant claims that the court's refusal to allow his common law defense of medical necessity was error.

We conclude that not only was defendant's proffered evidence insufficient to make out a medical necessity defense, but the limited immunity afforded under Proposition 215 is incompatible with a common law defense of medical necessity.

## A. The Applicability of a Medical Necessity Defense

"To justify an instruction on the defense of necessity, a defendant must present evidence sufficient to establish that [he] violated the law (1) to prevent a significant and imminent evil, (2) with no reasonable legal alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief that the criminal act was necessary to prevent the greater harm, (5) with such belief being objectively reasonable, and (6) under circumstances in which [he] did not substantially contribute to the emergency. [Citations.]" (*People v. Kearns* (1997) 55 Cal.App.4th 1128, 1135 [64 Cal.Rptr.2d 654].)

In contrast, Proposition 215 grants a limited immunity from prosecution for the cultivation or possession of marijuana by either a patient or a patient's primary caregiver "who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5, subd. (d); see *People v. Mower* (2002) 28 Cal.4th 457 [122 Cal.Rptr.2d 326, 49 P.3d 1067].) Judicial recognition of the broader and different immunity afforded by a medical necessity defense—which would not require a physician's recommendation, would extend beyond a patient or caregiver, and could excuse crimes other than cultivation or possession—would break faith with the voters' adoption of a narrow legislative exception to our criminal drug prohibitions in the form of Proposition 215.

"Under any conception of legal necessity, one principle is clear: The defense cannot succeed when the legislature itself has made a 'determination of values.' [Citation.]" (*United States v. Oakland Cannabis Buyers' Cooperative* (2001) 532 U.S. 483, 491 [121 S.Ct. 1711, 1718, 149 L.Ed.2d 722, 732] (*Oakland Cannabis Buyers' Cooperative*).) Thus, in *Oakland Cannabis Buyers' Cooperative,* the United States Supreme Court rejected a medical necessity exception to the prohibitions against the manufacture and distribution of marijuana under the federal Controlled Substances Act because such a defense was at odds with the terms of the act, even though the act did not explicitly abrogate that defense: "The statute expressly contemplates that many drugs 'have a useful and legitimate medical purpose and are necessary to maintain the health and general welfare of the American people,' [citation], but it includes no exception at all for any medical use of marijuana. Unwilling to view this omission as an accident, and unable in any event to override a legislative determination manifest in a statute, we reject the . . . argument [in favor of medical necessity]. [Fn. omitted.]" (*Oakland Cannabis Buyers' Cooperative, supra,* 532 U.S. at p. 493 [121 S.Ct. at p. 1719, 149 L.Ed.2d at p. 733].)

Similarly, here, although Proposition 215 establishes a narrow exception to our drug laws for the medical use of marijuana, it does so only for a patient or a patient's primary caregiver, only for the crimes of possession or cultivation of marijuana, and only upon a physician's recommendation or approval. (See *People v. Rigo* (1999) 69 Cal.App.4th 409, 414 [81 Cal.Rptr.2d 624] [postarrest medical approval insufficient to allow application of Prop. 215].) To grant defendant a broader medical necessity defense would eliminate the voters' decision to limit the immunity to only certain crimes, to only a particular class of persons (patients and their primary caretakers), and to only those patients who had a physician's approval for personal medical use. Such a common law defense would, in the words of the United States Supreme Court in *Oakland Cannabis Buyers' Cooperative, supra*, 532 U.S. at page 491 [121 S.Ct. at page 1718, 149 L.Ed.2d at page 732], be at odds with the voters' " 'determination of values' " and would override their legislative determination by affording a broader defense unconstrained by the various conditions and limitations that they adopted in the proposition.

Our conclusion is further bolstered by both the nature of the necessity defense, the rules of statutory construction, and the ballot arguments supporting adoption of the proposition. ■ First, "[n]ecessity does not negate any element of the crime, but represents a public policy decision not to punish such an individual despite proof of the crime." *(People v. Heath* (1989) 207 Cal.App.3d 892, 901 [255 Cal.Rptr. 120].) ■ Proposition 215 represents a public policy decision. But it is one that is different and inconsistent with a medical necessity defense. The elements of the two public policies are in conflict. An unexpressed public policy should not be engrafted onto statutory language that expresses an inconsistent public policy.

Second, the language of Proposition 215, as illuminated by the application of the principle of statutory construction, *expressio unius est exclusio alterius*, precludes our expansion of the limited immunity afforded by the proposition. ■ Under that canon of statutory construction, "where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed," absent "a discernible and contrary legislative intent." *(Wildlife Alive v. Chickering* (1976) 18 Cal.3d 190, 195 [132 Cal.Rptr. 377, 553 P.2d 537]; see 2A Singer, Statutes and Statutory Construction (6th ed. 2000) Intrinsic Aids § 47:23, p. 314.) ■ Application of that rule to this case prevents our judicially engrafting a common law defense that would undo the limitations and conditions placed by the voters on the immunity afforded under Proposition 215.

 ██ █ Third, that the voters believed that the narrow and conditional immunity that they adopted in Proposition 215 was not compatible with a broader exemption allowed by a medical necessity defense is further demonstrated by the ballot materials for the proposition.[5] In their ballot arguments, the initiative's proponents argued: "Proposition 215 would also protect patients from criminal penalties for marijuana, but ONLY if they have a doctor's recommendation for its use." (Ballot Pamp., Gen. Elec. (Nov. 5, 1996) argument in favor of Prop. 215, p. 60 (hereinafter the Ballot Pamphlet).) And they argued that the proposition "only allows marijuana to be grown for a patient's personal use. Police officers can still arrest anyone who grows too much [marijuana], or tries to sell it." (*Id.*, rebuttal to argument against Prop. 215, p. 61.) Thus, voters understood that California's authorization of immunity from prosecution was dependent upon a physician's recommendation and did not imply any protections for drug sales.

Accordingly, we conclude that a medical necessity defense is inconsistent with the more limited statutory exception established by Proposition 215, which affords only a limited immunity to prosecution for the cultivation or possession of marijuana.[6]

### B. *Sufficiency of the Showing of Medical Necessity*

██ Even if a medical necessity defense was allowable, defendant's offer of proof was insufficient to support such a defense here.

██ For purposes of determining whether the trial court properly refused defendant's medical-necessity instruction, we need not adopt the trial court's reasons because " ' "a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." [Citation.]' [Citation.]" (*People v. Zapien* (1993) 4 Cal.4th 929, 976 [17 Cal.Rptr.2d 122, 846 P.2d 704].)

### 1. *Significant and Imminent Evil*

██ First, "[t]here must be a showing of imminence of peril before the defense of necessity is applicable. A defendant is 'not entitled to a claim of

---

[5]To the extent that there are any ambiguities in the statutory language of the proposition so as to imply its compatibility with a common law defense, " ' "it is appropriate to consider indicia of the voters' intent other than the language of the provision itself. [Citation.]' [Citation.] Such indicia include the analysis and arguments contained in the official ballot pamphlet. [Citations.]" (*Legislature v. Eu* (1991) 54 Cal.3d 492, 504 [286 Cal.Rptr. 283, 816 P.2d 1309].)

[6]We are not confronted with the issue, and thus do not express any opinion, whether the medical necessity defense could be invoked under state law in the event that Proposition 215 was no longer operative.

duress or necessity unless and until he demonstrates that, given the imminence of the threat, violation of [the law] was the only reasonable alternative.' *U[nited] S[tates] v. Bailey* (1980) 444 U.S. 394, 411 [62 L.Ed.2d 575, 591, 100 S.Ct. 624]. The uniform requirement of California authority discussing the necessity defense is that the situation presented to the defendant be of an emergency nature, that there be threatened physical harm, and that there was no legal alternative course of action available." (*People v. Weber* (1984) 162 Cal.App.3d Supp. 1, 5; *People v. Heath, supra,* 207 Cal.App.3d at p. 901 [same]; *People v. Patrick, supra,* 126 Cal.App.3d at p. 960 ["a well-established central element [of the necessity defense] involves the emergency nature of the situation, i.e., the imminence of the greater harm which the illegal act seeks to prevent"].)[7]

Defendant's offer of proof fell far short of showing an imminent threat of harm. As described by defense counsel, "the significant evil is that there are persons who are suffering from a number of infirmities and/or diseases some of which are AIDS, HIV, cancer, glaucoma, anorexia, spasticity, and arthritis . . . ." But defendant's offer of proof had to address whether the patients whom he sought to supply faced an "imminent" peril, or at a minimum, a threat in the "immediate future" of physical suffering, owing to a lack of marijuana if defendant did not supply it. Defendant's offer of proof did not identify any person, or even any well-defined group, whose present lack of marijuana under the terms of Proposition 215 raised the immediate prospect of suffering if defendant did not come to their aid.

Defense counsel did argue (in addressing another element of the defense) that statistics and expert testimony would show that there is a "fatal sparsity" of marijuana in urban areas where most medical marijuana users supposedly live and where cultivation is purportedly difficult. But statistics cannot substitute for the lack of evidence that defendant and others faced an emergency situation. Such statistics fail to show immediacy, only eventuality.

### 2. *No Reasonable Legal Alternative*

The trial court held that defendant failed to offer sufficient evidence that he had no adequate legal alternative to violating the law. It noted that

---

[7]"Some formulations of the necessity defense specifically include an 'imminence' requirement. [Citation.] In others, the immediacy of the danger becomes a factor in assessing the reasonableness of the actor's belief regarding the magnitude of the 'greater harm' he seeks to prevent. [Citation.]" (*People v. Patrick, supra,* 126 Cal.App.3d 952, 960, fn. 6.) Other California courts draw a distinction between an "imminent threat" as a requirement for a duress defense and a "threat in the immediate future" applicable to a necessity defense. (See, e.g., *People v. Heath, supra,* 207 Cal.App.3d at p. 901; *People v. Beach* (1987) 194 Cal.App.3d 955, 973 [240 Cal.Rptr. 50].) In any event, there must be some immediacy.

Proposition 215 afforded a way to provide medical marijuana to patients under specified conditions.

Defendant claims that "it is not a reasonable legal alternative to say that [patients] can grow [marijuana] at home or [that] caregivers . . . can grow it because the statistics that we will present is they just can't do it, and . . . some of them are to[o] infirm[] to do it . . . ."

However, " '[u]nder any definition of [the duress and necessity] defenses one principle remains constant: if there was a reasonable, *legal* alternative to violating the law, "a chance both to refuse to do the criminal act and also to avoid threatened harm," the defenses will fail. [Citation.]' " (*Trippet, supra,* 56 Cal.App.4th at p. 1539, italics added, quoting *United States v. Bailey, supra,* 444 U.S. at p. 410 [100 S.Ct. at p. 635].)

Defendant acknowledges that "the marijuana was intended for his own personal medical use and that of the cooperative member patients," but he failed to have a physician's approval or recommendation before his arrest; thus, he had—but did not take advantage of—a legal alternative for himself. As for others, he could have attempted to qualify as a primary caregiver for particular individuals whom he wanted to help, but failed to qualify himself for this legal alternative. In short, defendant had legal alternatives; they were just not convenient ones for him. But the necessity defense only requires a reasonable legal alternative, not a convenient one.

### 3. *Objectively Reasonable Belief*

To support a medical necessity defense, a defendant must also have an "objectively reasonable" belief that his criminal conduct was necessary. "It is not enough that the actor believes that his behavior possibly may be conducive to ameliorating certain evils; he must believe it is 'necessary' to avoid the evils." (Model Pen. Code & Commentaries, com. to § 3.02, p. 12.)

But defendant had not even contacted the Oakland Cooperative when he began cultivating his marijuana crop in 1996 and again in May 1997. He was thus unaware whether his marijuana cultivation was necessary for the supply of marijuana for Cooperative members at the time he began it. Under these circumstances, defendant could not have had an objectively reasonable belief that his yet-to-be harvested 1997 crop was genuinely necessary to prevent a significant and immediate peril to needy patients.

Hence, even if a medical necessity defense was available, defendant's offer of proof was woefully insufficient.

### III. *Section 11362.5 Defense*

As noted, Proposition 215 affords a limited immunity from prosecution for the cultivation and possession of marijuana to "a patient, or to a patient's primary caregiver, who possesses or cultivates marijuana for the personal medical purposes of the patient upon the written or oral recommendation or approval of a physician." (§ 11362.5, subd. (d).)

 Defendant did not qualify as a primary caregiver under this statute. Proposition 215 defines primary caretaker as "the individual designated by the person exempted under this section who has consistently assumed responsibility for the housing, health, or safety of that person." (§ 11362.5, subd. (e).)

Instead, defendant sought a jury instruction that marijuana could be legally provided under Proposition 215 to patients "through [the patients'] . . . cooperatives or dispensaries."

The trial court instructed that "[a] person is not guilty of unlawful possession or cultivation of marijuana when the acts of the defendant or a primary caregiver are authorized by the law for compassionate use," but rejected defendant's extension of the statute.[8]

Defendant argues that "the protection afforded to patients and caregivers in [section] 11362.5 necessarily implies exceptions . . . other than those

---

[8]The instruction given by the court, based on former CALJIC No. 12.24.1 (1998 new) (6th ed. 1996), provided: "A person is not guilty of unlawful possession or cultivation of marijuana when the acts of the defendant or a primary caregiver are authorized by the law for compassionate use. [¶] A primary caregiver means the individual designated by the person exempted who is consistently assigned the responsibility for the housing, health or safety of that person. The defendant has the burden of proving by a preponderance of evidence all of the facts necessary to establish the element[s] of this defense of namely one, a physician recommended or approved orally [or] in writing the defendant's personal use of marijuana, two, the amount of marijuana possessed or cultivated was reasonably related to the defendant's then current medical needs."

(In 1999, CALJIC No. 12.24.1 was modified "to allow the jury to determine whether the use . . . was medically appropriate." (Use Note to CALJIC No. 12.24.1 (1999 rev.) (6th ed. 1996) p. 15.)

In contrast, defendant's proposed medical use instruction stated: "The defendant is not guilty of the possession or cultivation of marijuana if he has established by burden of proof to a preponderance of the evidence that his possession and cultivation of marijuana was for use by seriously ill Californians who have received recommendations by a physician for use of marijuana as medicine in the treatment of cancer, anorexia, AIDS, chronic pain, spasicity [sic], glaucoma, arthritis, migraine, or any other illness for which marijuana provides relief. [¶] Marijuana may be provided to such users through a 'primary caregiver' who consistently assumes responsibility for the housing, health or safety of the users above-specified, *or through users' buyers' cooperatives or dispensaries*." (Italics added.)

expressly enumerated in [section] 11362.5, including protection for those who *provide* medicinal cannabis to patients and/or caregivers." (Italics added.)

Various permutations of defendant's contention have been rejected in *People v. Young* (2001) 92 Cal.App.4th 229, 237 [111 Cal.Rptr.2d 726] (*Young*), *Trippet, supra,* 56 Cal.App.4th at pages 1545-1551, and *People ex rel. Lungren v. Peron* (1997) 59 Cal.App.4th 1383, 1390-1395 [70 Cal.Rptr.2d 20] (*Peron*).

In *Young,* we ruled that Proposition 215 "does not provide a defense to the transportation of marijuana in the circumstances presented [t]here" since "[t]he statute on its face exempts only possession and cultivation from criminal sanctions for qualifying patients." (*Young, supra,* 92 Cal.App.4th at p. 237.) There, the defendant was transporting 4.74 ounces of marijuana in his car under the purported auspices of a physician's recommendation for use of cannabis. (*Id.* at p. 232.)

In *Trippet,* the Court of Appeal ruled that the "symmetry between legal principle and evidence of the voters' intent compels the conclusion that, as a general matter, Proposition 215 does not exempt the transportation of marijuana allegedly used or to be used for medical purposes from prosecution . . . ." (*Trippet, supra,* 56 Cal.App.4th at p. 1550.)[9]

In *Peron,* the Court of Appeal held that parties operating a commercial enterprise selling or otherwise furnishing marijuana to patients did not qualify as primary caregivers under Proposition 215 simply by obtaining from the purchaser a designation as such: "The statutory language limits the patient's access to marijuana to that which is personally cultivated by the patient or the patient's primary caregiver on behalf of the patient. If the drafters of the initiative wanted to legalize the sale of small amounts of marijuana for approved medical purposes, they could have easily done so. [Citation.] The fact that they did not, and the reasons advanced in the ballot pamphlet in support of the initiative, indicated with certainty that its drafters were aware of both state and federal law prohibiting such sales and were attempting to avoid a conflict therewith." (*Peron, supra,* 59 Cal.App.4th at p. 1394.)

---

[9]The court in *Trippet* suggested that a section 11362.5 defense might be available to a patient or a primary caregiver who transported marijuana "reasonably related to the patient's current medical needs" (*Trippet, supra,* 56 Cal.App.4th at p. 1551), lest, for instance, a patient's primary caregiver be guilty of a crime for "carrying otherwise legally cultivated and possessed marijuana down a hallway to the patient's room" (*id.* at p. 1550). We need not reach that issue in this case since defendant admits that most of his cultivation was not done in his capacity as a caregiver or patient.

Based on these cases and the language of the initiative and the ballot materials, we reject defendant's claim that Proposition 215 can be construed to imply an exception for furnishing marijuana to a marijuana buyers' cooperative.

█ First, engrafting an additional implied exception onto a statute that establishes a carefully delineated exception would run afoul of the previously noted rule of statutory construction, *expressio unius est exclusio alterius:* "Under the familiar rule of construction, *expressio unius est exclusio alterius,* where exceptions to a general rule are specified by statute, other exceptions are not to be implied or presumed," absent "a discernible and contrary legislative intent." (*Wildlife Alive v. Chickering, supra,* 18 Cal.3d at p. 195; accord, *Andrus v. Glover Construction Co.* (1980) 446 U.S. 608, 616-617 [100 S.Ct. 1905, 1910-1911, 64 L.Ed.2d 548, 557].) █ No contrary legislative intent is discernible in the language of Proposition 215, which sets forth only two classes of persons qualified for the exception: patients and their primary caregivers, not suppliers to marijuana buyers' cooperatives. As the Court of Appeal therefore concluded in *Trippet:* "We may not infer exceptions to our criminal laws when legislation spells out the chosen exceptions with such precision and specificity. [Citations.]" (*Trippet, supra,* 56 Cal.App.4th at p. 1550; *Peron, supra,* 59 Cal.App.4th at pp. 1392, 1394.)

Second, the findings and declared purposes of the proposition expressly assert that its purposes are "[t]o ensure that patients and their primary caregivers who obtain and use marijuana for medical purposes upon the recommendation of a physician are not subject to criminal prosecution or sanction" (§ 11362.5, subd. (b)(1)(B)) and "[t]o encourage the federal and state governments to implement a plan to provide for the safe and affordable distribution of marijuana to all patients in medical need of marijuana" (§ 11362.5, subd. (b)(1)(C)). This reaffirms the proposition's intent to protect patients and primary caregivers, not private suppliers. Otherwise, there would be no reason to omit any reference to private suppliers from the initiative's protections, nor any reason to encourage only the federal and state governments to implement a plan to distribute marijuana.

Third, *Trippet* and *Peron* observe that the Ballot Pamphlet for Proposition 215 confirmed the intent of the voters not to legalize any activity beyond the possession and cultivation of marijuana for personal medical use. (*Trippet, supra,* 56 Cal.App.4th at pp. 1545-1546; *Peron, supra,* 59 Cal.App.4th at pp. 1393-1395.) █ If there is any claimed ambiguity in the statutory language, we may consider indicia of the voters' intent, which includes the analysis and arguments contained in the official ballot pamphlet." (*Peron,*

*supra,* 59 Cal.App.4th at p. 1393; accord, *Legislature v. Eu, supra,* 54 Cal.3d at p. 504.) And in this case, proponents of the measure argued in the Ballot Pamphlet that it only allows possession and cultivation for personal use, not sales: "Proposition 215 allows patients to cultivate their own marijuana simply because federal laws prevent the sale of marijuana, and a state initiative cannot overrule those laws." (Ballot Pamp., *supra,* argument in favor of Prop. 215, p. 60.) As the court in *Peron, supra,* 59 Cal.App.4th at page 1393, footnote 6, pointed out, although this may be a misleading statement of federal law, it nonetheless illuminates the proposition's intent to only permit under limited circumstances cultivation and possession, not sales. Indeed, the ballot materials make clear that the proposition was narrowly drafted to avoid the creation of loopholes for drug dealers: In the rebuttal to the argument by opponents that Proposition 215 would "provide new legal loopholes for drug dealers to avoid arrest and prosecution" (Ballot Pamp., *supra,* argument against Prop. 215, p. 61), the initiative's proponents responded that it "only allows marijuana to be grown for a patient's personal use. Police officers can still arrest anyone who grows too much, or tries to sell it." (*Id.,* rebuttal to argument against Prop. 215, p. 61.) And "in his neutral analysis of the proposition . . . , the Legislative Analyst stated that the proposed law 'does not change other legal prohibitions on marijuana . . . .' [Citation.]" (*Trippet, supra,* 56 Cal.App.4th at p. 1546; *Peron, supra,* 59 Cal.App.4th at pp. 1393-1394.) Accordingly, the ballot materials demonstrate that voters did not intend to extend the immunity to those who distribute marijuana to primary caretakers.

Defendant suggests that Proposition 215 must be interpreted to allow some "manufacture and distribution of marijuana for medicinal purposes" lest the operation of the statutory immunity be made impractical. But the ballot materials show that Proposition 215 was narrowly drafted to make it acceptable to voters and to avoid undue conflict with federal law. As a court, we must respect the compromises and choices made in the legislative and initiative process, not substitute our judgment of what would constitute a more effective measure. As noted in *Peron, supra,* 59 Cal.App.4th at pages 1394-1395, by permitting sales to further medical use of marijuana, "we would initiate a decriminalization of sales of and traffic in marijuana in this state. Whether that concept has merit is not a decision for the judiciary. It is one the Legislature or the people by initiative are free to make. Proposition 215, in enacting section 11362.5, did not do so."

Accordingly, we agree with *Trippet* and *Peron* that there is no support whatsoever for the argument that section 11362.5 impliedly authorized trafficking in marijuana for medical use—the result that defendant seeks here. *Trippet* in fact condemned the notion that section 11362.5 opened the

door for a private medical marijuana distribution system, despite the statute's patent design to the contrary: "We . . . have no hesitation in declining appellant's rather candid invitation to interpret the statute as a sort of 'open sesame' regarding the possession, transportation and sale of marijuana in this state. To hold as she effectively urges would be tantamount to suggesting that the proposition's drafters and proponents were cynically trying to 'put one over' on the voters and that the latter were not perceptive enough to discern as much." (*Trippet, supra,* 56 Cal.App.4th at p. 1546, fn. omitted.)

Hence, defendant's argument for extending the express exception created by Proposition 215 flies in the face of the precise language of the proposition, the rules of statutory construction, and the ballot arguments. ██ ██ The trial court did not err in refusing to give defendant's instruction.[10]

## IV. *Fair Notice**

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is affirmed.

Blease, Acting P. J., and Hull, J., concurred.

---

[10]In light of the California Supreme Court's recent decision in *People v. Mower, supra,* 28 Cal.4th 457, the trial court, however, did err in instructing the jury pursuant to a modified version of CALJIC No. 12.24.1 that the defendant had the burden of proving by a preponderance of the evidence all of the facts necessary to establish his defense. In accordance with *Mower,* defendant's burden was merely to raise a reasonable doubt as to his guilt based on his defense. However, the error was harmless because defendant could not be deemed a primary caregiver in this case, and thus could not come under the proposition's exception for primary caregivers. Further, he could not make out an exception for cultivation as a patient: He did not have a physician's recommendation or approval until after his arrest and was growing (by his own admission) more marijuana than necessary for his personal medical needs.

*See footnote, *ante,* page 1147.