Filed 9/21/15  P. v. Martinez CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>NICOLAS BRIAN MARTINEZ,<br><br>    Defendant and Appellant. | F068492<br><br>(Super. Ct. No. BF147536A)<br><br>**OPINION** |

-ooOoo-

### THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  J. Eric Bradshaw, Judge.

Meredith J. Watts, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Michael P. Farrell, Assistant Attorney General, Kathleen A. McKenna and Sarah J. Jacobs, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*       Before Levy, Acting P. J., Poochigian, J. and Peña, J.

Nicolas Brian Martinez was convicted of numerous charges that arose from two accidents he caused while driving with a blood-alcohol content of 0.28 percent. His only defense to the charges was a claim that he drove knowing he was intoxicated because of a legal necessity that excused his criminal conduct. The trial court refused to instruct the jury on the defense of necessity, concluding Martinez failed to present sufficient evidence to support the elements of the defense. Martinez argues the trial court erred. We find no error and affirm the judgment.

## FACTUAL AND PROCEDURAL SUMMARY

### *The Information*

Martinez was charged with six counts and numerous enhancements as the result of two separate accidents that occurred when Martinez drove his vehicle with a blood-alcohol content of 0.28 percent. The first accident occurred when Martinez struck two pedestrians as he was leaving the parking lot of the nightclub (club) at which he had been drinking. The second accident occurred a few miles down the road after Martinez left the club's parking lot.

The charges related to the first accident were (1) driving under the influence of alcohol and causing injury to another person (Veh. Code, § 23153, subd. (a), count 1), (2) driving with a blood-alcohol content above 0.08 percent and causing injury to another person (*id.*, § 23153, subd. (b), count 2), and (3) failing to stop at the scene of an injury accident (*id.*, § 20001, subd. (b)(1), count 5). Counts 1 and 2 also alleged the following enhancements: (1) Martinez caused great bodily injury within the meaning of Penal Code section 12022.7; (2) Martinez caused injury to multiple victims in one accident within the meaning of Vehicle Code section 23558; and (3) Martinez had a blood-alcohol content above 0.15 percent at the time of the accident within the meaning of Vehicle Code section 23578.

The charges related to the second accident were (1) driving under the influence of alcohol and causing injury to another person (Veh. Code, § 23153, subd. (a), count 3), (2) driving with a blood-alcohol content above 0.08 percent and causing injury to another person (*id.*, § 23153, subd. (b), count 4), and (3) failing to stop at the scene of an injury accident (*id.*, § 20001, subd. (b)(1), count 6).  Because there were four persons injured as a result of the second collision, the enhancements on counts 3 and 4 were (1) two allegations that Martinez caused great bodily injury within the meaning of Penal Code section 12022.7, (2) two allegations that Martinez caused injury to multiple victims in one accident within the meaning of Vehicle Code section 23558, and (3) Martinez had a blood-alcohol content above 0.15 percent at the time of the accident within the meaning of Vehicle Code section 23578.

### *Prosecution Evidence*

Kalani Tamondong was working as a security guard at the club Martinez chose to attend on the night in question.  Tamondong observed Martinez inside the club in an obviously intoxicated state.  Martinez was warned twice to control his behavior; Tamondong ordered the bartenders to stop serving Martinez alcoholic beverages. Martinez continued to behave inappropriately, so Tamondong ejected Martinez from the club by escorting him outside.

One of Martinez's friends became argumentative with the security guards because Martinez was being ejected from the club.  Tamondong walked Martinez outside and then immediately returned inside the club to make sure Martinez's friend calmed down.  When Tamondong confirmed there were no problems inside, he returned outside to check on Martinez.  Initially, Tamondong could not locate Martinez but finally found him sitting inside of his (Martinez's) vehicle.  Tamondong knew Martinez was too intoxicated to drive, so he ran to the vehicle to remove Martinez from the vehicle.  Martinez put the vehicle in reverse and hit two females who were walking towards the entrance of the club, pinning one of them against the outside wall of the club.  Tamondong attempted to

3.

open the vehicle door to remove Martinez, but it was locked. Martinez then drove away from the club.

Sonia Sandoval was walking towards the club when she was struck by a truck. She suffered a broken leg and a contusion on her thigh. At the time of trial she had pain in both her legs and got headaches continuously. Evangelina Robles was with Sandoval at the time of the accident. Robles described a black SUV backing up at a fast rate of speed when it struck both Sandoval and her. The SUV left after hitting the two women. Robles suffered bruises and a back injury that caused her to miss a significant amount of time from work.

After leaving the club's parking lot, Martinez did not drive very far before he rear-ended a vehicle, causing a chain reaction accident. Bakersfield Police Officer Antonio Orozco explained that the vehicle Martinez was driving rear-ended a gray Mitsubishi Galant. The Galant was pushed into the rear of a Volkswagen Passat[1] and then crossed over into the adjacent lane where the Galant collided with a gray Mazda. As a result of this second collision, the driver of the Mazda lost control of the vehicle, crossed into oncoming traffic, and collided with a Jeep Liberty that was traveling in the opposite direction. Orozco determined the cause of the accident was Martinez driving while under the influence of alcohol.

Alan Earl Sargent was stopped at the intersection when he observed a black SUV rear end two vehicles and then push another vehicle into oncoming traffic. The driver of the SUV exited the vehicle, jumped over a chain-link fence into the city's corporation yard that was across the street. Sargent estimated the speed of the SUV at the time of

---

[1]     The record identifies the vehicle as a Volkswagen Façade. Since Volkswagen does not make a model called a Façade, it would appear the reporter erred. The Volkswagen model most similar in name to a Façade is the Passat, so we assume this is the vehicle referred to by the witness.

impact at approximately 40 miles per hour and identified Martinez as the driver of the vehicle.

Allison Page Tarula was driving the Mitsubishi Galant on the night in question. She could not remember anything about the accident, but she identified a picture of the vehicle she was driving that night. Since the accident she has not been able to participate in sports, she can no longer run, and she has frequent back pain for which she is still receiving treatment. It is very painful for her to breathe, and she suffers from memory loss. She also had difficulty in school.

Jessica Rivera[2] was driving down the street on the night in question when a vehicle driving in the opposite direction crossed over into her lane and collided with her vehicle. As a result of the accident she suffered a separated shoulder and was in a lot of pain. She still had pain at the time of trial. Her passenger, Sabrina Spink, had some bruising on her legs.

Bakersfield Police Officer Keith Cason responded to the scene and found Martinez in the city's corporation yard. Martinez had red, bloodshot, and watery eyes, an unsteady gate, slurred speech, and smelled strongly of alcohol. When asked to perform a field sobriety test, Martinez replied, "F--- you. You ain't got shit on me." Cason properly performed a preliminary screening blood-alcohol test on Martinez. The test results indicated a blood-alcohol content above the legal limit.[3] As a result of the test and Cason's observations, Martinez was arrested for driving while under the influence of alcohol. Martinez then elected to take a blood test, so he was transported to the hospital to conduct the test. The blood sample was tested at the Kern County crime lab. The test indicated a blood-alcohol level of 0.28 percent.

---

[2]    Also referred to as Jessica Markham in the record.

[3]    The results were described as both 0.2086 percent and 0.28 percent.

*Defense Case*

Martinez testified in his defense. He explained his activities on the day in question. He began drinking about noon at a party he attended with a friend. Although they were in Martinez's vehicle, his friend drove because Martinez had been drinking. Martinez and his friend next went to another gathering to visit some different friends. A group then decided to go out to the club. Martinez's friend drove to these places.

At the club Martinez and his friends continued drinking alcohol. At one point Martinez visited the restroom. When he exited, he was confronted by Javi.[4] Martinez had sold a vehicle to Javi but had been unable to provide him with the title to the vehicle because he had obtained a loan and had used the vehicle as collateral. The loan company still had the title because Martinez had not yet repaid the loan. At the club, Javi inquired about the title to the vehicle. Martinez stated he had not finished paying off the loan, so he did not have the title. Javi then asked for his money, which Martinez did not have. Javi then replied, "You need to come up with my f------ money or you better not leave before I do."

Martinez became scared because about 10 years previously his brother, Daniel Dominguez, had been severely beaten with a metal bat, run over by a vehicle, and abandoned at a park. A few years later Martinez learned from a friend that it was Javi's cousins who had beaten up Dominguez. Those same cousins were at the bar with Javi that night.

Martinez unsuccessfully attempted to borrow money from a friend to give to Javi. Martinez could tell Javi was upset when he told him he could not come up with any money. Javi again told Martinez he had better make certain not to leave the club before Javi left. Martinez stumbled as he returned to the table. That was when a security guard

---

[4]     Martinez refused to provide any further identifying information for Javi, purportedly because Martinez was afraid of retaliation.

approached him and told him he needed to leave the club. Martinez denied he had been given any warnings about his behavior before he was ejected from the club and also denied he had touched any women inappropriately.

Martinez testified he tried to communicate to the security guard that he could not be alone outside. Martinez told the security guard that he could not leave without his driver. When outside, Martinez sat down and waited for his friend. Martinez asked his friend if he would drive him home, but his friend stated he did not want to get involved. Martinez also asked a security guard if they were going to call him a taxi, and the security guard shook his head, indicating no. Martinez then walked to his vehicle, intending to sit in the passenger seat. When he approached his vehicle, Martinez saw one of Javi's cousins come outside and head towards another vehicle. Martinez was panicked and afraid for his life, so he walked back to his friend and asked him for a ride, suggesting an urgent need to leave. His friend stated he did not want to get involved. Martinez thought about walking home but concluded he could not leave the club on foot because it would have been even easier for Javi to find him.

Martinez testified he could not remember anything after that point. He claimed he did not remember walking towards his vehicle, getting into his vehicle, leaving the parking lot, hitting the first two victims, getting into an accident, or running from the scene of the accident.

On cross-examination, Martinez admitted he had drunk a lot of alcohol that night and admitted he was drunk, but he claimed he did not know who was responsible for the accident because he could not remember anything about it. He was unable to provide any identifying information for Javi other than his first name. Martinez also expanded on his story about his debt to Javi. He explained that Javi had paid off his (Martinez's) loan, in addition to paying the purchase price of the vehicle so Javi could obtain the title to the vehicle. Javi wanted to collect from Martinez the extra money he had to pay to obtain the title to the vehicle.

7.

Martinez refused to provide a last name for any of his friends with whom he had gone to the club. Nor would he provide any information to locate those individuals. The first time he told anyone he had been threatened that night was when he testified at trial. He admitted he could have asked one of the bouncers to call the police. He claimed he could not call for a taxi because his cell phone was not activated. He could not use one of his friends' cell phones because they had not been kicked out of the club.

Martinez's brother, Dominguez, confirmed that he had been severely beaten in 2005. He described his injuries and repeated that he thought Javi's cousins had been responsible for the attack.

Lola O'Neal testified she had been acquainted with Martinez for a number of years, and that he had a reputation for truthfulness and honesty. Lori Eischen also testified that in her opinion Martinez was a truthful person.

### *Rebuttal Evidence*

Cason testified that when he encountered Martinez in the city's corporation yard, Martinez was drunk and agitated. Martinez did not appear to be fearful or afraid. Statements indicating Martinez's mental state at the time included a comment that he was grateful he had wrecked his SUV and not his "seven series," apparently referring to a BMW 7 series vehicle. Martinez continued his verbal assault by claiming he made more money than Cason, and he could afford to hire a local attorney who would beat the case. Martinez also stated his mother had a BMW 7 series that she would put up for him anytime. Martinez did not mention he had been threatened earlier that evening.

*Verdict and Sentencing*

The jury returned a verdict of guilty on all charges and found each enhancement true. The trial court sentenced Martinez to the aggravated term of three years on count 3, enhanced by six years as a result of the two Penal Code section 12022.7 findings, and enhanced by an additional term of one year for the Vehicle Code section 23558 enhancement.[5] As to count 1, the trial court imposed a term of eight months, enhanced by one year for the Penal Code section 12022.7 enhancement, and four months for the Vehicle Code section 23558 enhancement. The sentence for count 1 and the enhancements were calculated at one-third the midterm sentence. As to counts 5 and 6, the trial court imposed a sentence of eight months on each count, which was one-third the midterm sentence. Each sentence was imposed consecutively for a total term of 13 years four months in prison.[6]

## DISCUSSION

Based on his own testimony, Martinez requested the trial court instruct the jury on the defense of necessity. After lengthy argument and full consideration of the defense, the trial court refused the request. After the verdict, Martinez moved for a new trial, arguing that the trial court's refusal to instruct the jury on the defense of necessity was error. The trial court denied the motion.

Martinez argues the trial court erred when it refused his requested instruction on the defense of necessity. We conclude there was insufficient evidence to support the elements of the defense, and therefore the trial court did not err.

---

[5] The trial court imposed and then stayed the second Vehicle Code section 23558 enhancement.

[6] The sentences on counts 2 and 4 were imposed and stayed pursuant to Penal Code section 654.

Necessity is an affirmative defense based on public policy considerations. (*People v. Kearns* (1997) 55 Cal.App.4th 1128, 1134-1135.) "'To justify an instruction on the defense of necessity, a defendant must present evidence sufficient to establish that [he] violated the law (1) to prevent a significant and imminent evil, (2) with no reasonable legal alternative, (3) without creating a greater danger than the one avoided, (4) with a good faith belief that the criminal act was necessary to prevent the greater harm, (5) with such belief being objectively reasonable, and (6) under circumstances in which [he] did not substantially contribute to the emergency. [Citations.]' [Citation.]" (*People v. Galambos* (2002) 104 Cal.App.4th 1147, 1160; see CALCRIM No. 3403.) The defendant has the burden of establishing each element of the necessity defense by a preponderance of the evidence. (*People v. Waters* (1985) 163 Cal.App.3d 935, 937.)

The factual predicate for Martinez's claim of necessity was insufficient as a matter of law to establish the elements of that defense. While we question whether Martinez's testimony was sufficient to establish any of the elements of the defense, clearly there was no evidence to support two elements of the defense.

The first element lacking evidentiary support is element No. 2—that Martinez did not have a reasonable legal alternative. Martinez argues he had to drive from the club because Javi had threatened him, and he saw Javi's cousin in the parking lot. He also claimed he could not call the police because he was afraid of retaliation. We disagree. Ignoring the fact that there was no evidence Javi's cousin even knew Martinez was in the parking lot, upon seeing the cousin Martinez had numerous legal and safe alternatives. Martinez could have called the police and told them he needed a ride because he was intoxicated or that he had been threatened by some unknown individual. Martinez could have borrowed a phone to call a taxi, could have waited in his vehicle with the doors locked until Javi and his cousins left the club, or could have waited next to the security guards. Martinez also could have waited outside until he sobered sufficiently to reenter

10.

the club. Any of these alternatives were available to Martinez. Yet, he chose to drive while extremely intoxicated, thereby causing a danger to every vehicle on the roadway.

The second element for which there was no evidentiary support is element No. 3—that by choosing to drive while extremely intoxicated Martinez did not create a greater danger than the one he was avoiding. Martinez's focus on self-preservation resulted in his failure to recognize that his choice to drive while intoxicated placed every driver, every passenger, and every pedestrian in his vicinity in mortal danger. The injuries Martinez caused were horrible. However, Martinez is fortunate he did not cause a fatality as a result of his choice. In a worst case scenario, Martinez's testimony established he was concerned about a severe beating from Javi and his cousins. By choosing to drive a vehicle while extremely intoxicated, Martinez created an even greater danger than the one he was avoiding, as was amply established by the numerous individuals who were injured that night.

Not only was Martinez's testimony preposterous, it also failed to provide evidentiary support for his only defense to the charges. Accordingly, the trial court did not err in refusing to instruct the jury on the defense of necessity.

## DISPOSITION

The judgment is affirmed.